No. 24-12290-DD

# In the United States Court of Appeals for the Eleventh Circuit

STEVEN R. DEWITT,

*Plaintiff–Appellant*,

v.

DAVID MADDOX,

*Defendant–Appellee*.

## ANSWER BRIEF

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 4:21-CV-311-MW-MAF

JAMES UTHMEIER
*Attorney General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 410-2672 (fax)

ERIK D. KVERNE
*Corrections Practice Manager*
Florida Bar No.: 99829
*Erik.Kverne@myfloridalegal.com*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellees certify that the following is a complete list of interested persons as required by Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1:

1. Belitzky, Joe, former counsel for Appellee Maddox;
2. DeWitt, Steven, Appellant;
3. Fitzpatrick, Martin A., Magistrate Judge for the Northern District of Florida;
4. Florida Department of Corrections;
5. Kverne, Erik, Senior Assistant Attorney General, Counsel for Appellee Maddox;
6. Maddox, David, Appellee;
7. Moody, Ashley, former Attorney General for the State of Florida;
8. Sharma, Ravi, former counsel for Appellee Maddox;
9. Uthmeier, James, Attorney General for the State of Florida;
10. Villapando, Juanita, former counsel for Appellee Maddox;
11. Walker, Mark E., District Judge for the Northern District of Florida.

## CORPORATE DISCLOSURE STATEMENT

Nothing to declare.

## STATEMENT REGARDING ORAL ARGUMENT

This Court has already determined that this case should be set for oral argument based on a September 19, 2025, order issued in this appeal. *See* ECF 38-2. However, Appellee does not believe that oral argument is necessary or that it will assist this Court in answering any outstanding questions on appeal, in part because Appellant is not, and was not, blind during the jury trial in the District Court, and did not require the need of counsel to litigate his case before, during, or after the jury trial.

## TABLE OF CONTENTS

**Page No.**


STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF CONTENTS ........................................................ ii

TABLE OF CITATIONS ........................................................ iv

STATEMENT OF JURISDICTION ............................................ 1

STATEMENT OF THE ISSUES ................................................ 1

PRELIMINARY STATEMENT ................................................. 2

STATEMENT OF THE CASE .................................................. 3

I. Pretrial Proceedings, Course and Disposition of Trial and Post-in Trial Proceedings ........................................... 3

A. Pretrial Proceedings ....................................................... 3

B. Disposition of Trial ....................................................... 13

C. Post-Trial Proceedings .................................................. 16

II. Statement of Facts ........................................................ 17

III. Standard of Review ...................................................... 22

SUMMARY OF THE ARGUMENT ......................................... 22

ARGUMENT ........................................................................ 23

**I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DECLINING TO APPOINT APPELLANT COUNSEL** ............................ 23

**A. Appellant's claimed blindness does not demonstrate an exception circumstance** ................................................ 24

**B. Appellant was able to investigate and present the essential merits of his position in court** ...................................... 27

**C. Appellant's claims are not factually or legally complex** ............................................................................ 28

**II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION OR COMMIT PLAIN ERROR IN DECLINING TO ALLOW APPELLANT TO CALL ADDITIONAL WITNESSES OR INTRODUCE DOCUMENTS CONSTITUTING HEARSAY** .................................................... 31

**A. The District Court properly excluded the witnesses** ...................... 31

**B. The District Court properly excluded Appellant's exhibits** ............................................................................. 39

**III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT IT DID NOT NEED TO DISQUALIFY ITSELF** ............ 46

**A. Appellant's newly presented evidence should not be considered by this Court** ................................................... 46

**B. None of the allegations demonstrate a need for disqualification** ........................................................... 48

**C. Even if disqualification was required, the District Court's failure to disqualify itself amounted to harmless error** ........................................................... 53

CONCLUSION .............................................................................. 56

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION ... 57

CERTIFICATE OF TYPE SIZE AND STYLE ...................................... 57

CERTIFICATE OF SERVICE ........................................................... 57

# TABLE OF CITATIONS

**Cases** **Page No.**

*Bass v. Perin*,
170 F.3d 1312 (11th Cir. 1999) .......... 22

*Blue Martini Kendall, LLC v. Miami Dade County Florida*,
816 F.3d 1343 (11th Cir. 2016) .......... 22, 47, 48, 50

*Christo v. Padgett*,
233 F.3d 1324 (11th Cir. 2000) .......... 50

*Daubert v. Merrell Dow Parm., Inc.*,
509 U.S. 579 (1993) .......... 38

*DeWitt v. Florida*,
No. 4:15-cv-433 (N.D. Fla. Aug. 17, 2017) .......... 47, 53

*Jaffke v. Dunham*,
352 U.S. 280 (1957) .......... 31

*Kilgo v. Ricks*,
983 F.2d 189 (11th Cir. 1993) .......... 23

*Liljeberg v. Health Serv. Acq. Corp.*,
486 U.S. 847 (1988) .......... 54

*Liteky v. U.S.*,
510 U.S. 540 (1994) .......... 50

*McWhorter v. City of Burmingham*,
906 F.2d 674 (11th Cir. 1990) .......... *passim*

*Parker v. Connors Steel Co.*,
855 F.2d 1510 (11th Cir. 1988) .......... 49, 51, 53, 55

*Romero v. Drummond Co., Inc.*,
552 F.3d 1303 (11th Cir. 2008) .......... 35

*Smith v. Fla. Dept' of Corr.*,
713 F.3d 1059 (11th Cir. 2013) ........................................................ 23

*U.S. v. Novaton*,
271 F.3d 968 (11th Cir. 2001) ................................................... 22, 31

*U.S. v. Williams*,
527 F.3d 1235 (11th Cir. 2008) ........................................................ 22

**Rules**

Fed. R. Evid. 803(6) .................................................................... 41

**Other Authorities**

28 U.S.C. § 455(a) ........................................................................ 48

§ 33-103.005(4)(c), Fla. Admin. Code ............................................. 30

## STATEMENT OF JURISDICTION

Appellee agrees that this Court has jurisdiction over Plaintiff-Appellant's appeal. *See* Initial Brief at 13.

## STATEMENT OF THE ISSUES

**ISSUE I:** Whether Appellant should have been provided with counsel even though he has no right to counsel in a civil case, he is not blind, and his case did not present complex issues.

**ISSUE II:** Whether Appellant was entitled to a new trial because the District Court declined to allow appellant to call late-disclosed or undisclosed witnesses, including an expert, during his trial, and whether the District Court plainly errored in excluding two documents consisting of hearsay.

**ISSUE III:** Whether the District Court abused its discretion by not recusing itself from Appellant's case based on Appellant's insufficient allegations of bias on the part of the Court.

## PRELIMINARY STATEMENT

This is a review by appeal of several orders rendered prior to, during, and after a jury trial conducted from June 10, 2024, through June 13, 2024, by the Honorable Mark Walker, District Judge for the Northern District of Florida in and for the Tallahassee Division ("District Court"). The orders at issue encompass several pre-trial, trial, and post-trial decisions relating to denial of counsel, evidentiary matters, and denial of a motion to recuse the District Court.

In this Answer Brief, Steven R. DeWitt will be referred to as "Appellant." Appellee, David Maddox, will be referred to as "Appellee."

Citations to the record on appeal will be made by referring to the appropriate docket document number (as recorded in the District Court), followed by the page number (i.e., "Doc. 1 at 1"). Citations to this Court's Electronic Filing System will be made by referring to the ECF number in this Court, followed by the page number (i.e., "ECF 1 at 1"). Except for the page numbers of Appellant's Initial Brief, the page numbers used in this brief reflect the page numbers as enumerated in the District Court's electronic docketing system. Citations to Appellant's Initial Brief, docketed on March 2, 2026, will be made by referring to the brief as "Initial Brief," followed by the page number referenced (i.e., "Initial Brief at 1").

## STATEMENT OF THE CASE

Appellee provides an independent statement of the case.

# I. Pretrial Proceedings, Course and Disposition of Trial, and Post-Trial Proceedings.

## A. Pretrial Proceedings.

1. Initial pleadings and service.

On July 26, 2021, Appellant filed his initial complaint in the District Court. (Doc. 1). Appellant later filed an amended complaint. (Doc. 4). Appellant's amended complaint, when liberally construed, alleged that Appellee was deliberately indifferent to Appellant's need for protection during a transport between prisons on April 5, 2018, and that the actions taken by Appellee were done in retaliation for Appellant's exercise of his "freedom of speech" and Florida criminal conviction. *See, e.g., Id*.

On November 15, 2021, Appellee filed his Answer. (Doc. 15). Thereafter, the District Court issued an initial scheduling order.(Doc. 16).

2. Initial discovery period, Appellee's motion for summary judgment, and second discovery period.

The initial scheduling order set discovery to close on March 16, 2022, and for motions for summary judgment to be due by April 12, 2022. (Doc. 16). The initial scheduling order also established that disclosure of Appellant's expert witnesses and their opinions were due within 60 days from the date of the order. *Id*. at ⁋ 2(c). Under the timeline established, the parties exchanged discovery, neither party identified any expert witness or provided any opinions from an expert

witness, and Appellee filed a motion for summary judgment, which was denied on November 28, 2022. (Docs. 19; 24-25).

Before the case was set for trial, the District Court ordered that the parties indicate whether additional Discovery was necessary in the case. (Doc. 26). Based on the parties' responses, the District Court reopened discovery until February 28, 2023. (Doc. 29).

During the second discovery period, the parties exchanged additional discovery, including the taking of Appellant's deposition, and a request for Appellant to release his medical records. Appellant was compelled to release his medical records after Appellee moved to compel and for sanctions. (Docs. 31; 35; 39; 41).

On June 12, 2023, the District Court began the process of setting Appellant's case for trial. (Docs. 50; 52; 53).

3. Events prior to June 10, 2024, trial.

On June 23, 2023, the District Court conducted the first Pretrial Conference. (Doc. 58). After the first Pretrial Conference, the parties were required to submit their witness and exhibit lists. *See* (Doc. 59). Both parties complied with the District Court's order. *See* (Docs. 63-64).

Appellant's original witness list included sixteen (16) witnesses, including Robert House ("House"), and Sharon Ottinger ("Ottinger"), but did not include Joel Beavers ("Beavers"). (Doc. 64 at 8-11).

On August 2, 2023, the District Court reviewed Appellant's original witness list and ordered Appellant to submit an amended witness list by August 14, 2023. (Doc. 65).

On August 3, 2023, before receiving the District Court's order, Appellant submitted a flurry of filings. First, Appellant moved to supplement his pretrial narrative, witness and exhibit list, and submitted a copy of his additions. (Docs. 66-68). Appellant's supplemental witness list included House and Ottinger but did not include Beavers. *Id.*

Second, Appellant moved for appointment of counsel for trial, seven hundred forty-two (742) days after initiating his lawsuit. (Doc. 69). Appellant's motion only alleged that he was blind and relied on purported medical records from years prior to demonstrate that he should be entitled to counsel at trial. *Id*.

Third, Appellant caused confusion by submitting a second supplemental exhibit list on the same date as his supplemental exhibit list. (Doc. 70).

On August 7, 2023, the District Court considered Appellant's August 2, 2023, filings, without providing Appellee an opportunity to respond. (Doc. 71). The District Court granted Appellant's motion for leave and accepted his pretrial

narrative and second supplemental exhibit list but noted that Appellant "shall not file another exhibit list." *Id*. at 1-2. The District Court noted that Appellant expanded his witness list, that Appellant's witness list was still deficient, and held Appellant to the August 14, 2023, deadline to file an amended witness list. *Id.* at 2.

On August 7, 2023, the District Court also addressed Appellant's motion for appointment of counsel, without response by Appellee. *Id*. at 2. The District Court denied Appellant's motion because the alleged medical problems had persisted throughout the ongoing litigation, and yet, Appellant has been able to adequately represent himself. *Id*. Notwithstanding the denial, the District Court indicated that "any need for assistance at trial will be considered at the final pre-trial conference." *Id*.

On August 11, 2023, Appellant filed a motion for reconsideration of the District Court's decision relating to his exhibit list, (Doc. 77) which the District Court granted without awaiting a response from Appellee. (Doc. 78 at ⁋ 3).

On August 14, 2023, Appellant filed his amended witness list. (Doc. 79). Appellant's witness list included Beavers and continued to include Ottinger but did not include House as a witness. *Id*. at 1-2, 4.

On August 18, 2023, Appellee moved to strike witnesses from Appellant's amended witness list. (Doc. 81). Appellee sought removal of Ottinger due to failure to comply with the Federal Rules of Civil Procedure and the District

Court's initial scheduling order. *Id*. at 3-4. Appellee also sought removal of Beavers as duplicative of other witnesses. *Id*. at 5.

On August 23, 2023, the District Court addressed the motion to strike and an outstanding motion for leave to amend. (Doc. 83). The District Court determined that as to Ottinger, Appellant failed to comply with the Federal Rules and its previous orders, and as a result, that Appellant was not permitted to call Ottinger. *Id*. at 1-3. The District Court also struck Beavers from Appellant's witness list. *Id*. 3-4. Finally, the District Court denied Appellant's motion for leave to amend his witness and exhibit list again because he needed to be held to a final list and not be allowed to continually change both filings. *Id*. at 5-6.

On August 23, 2023, the District Court set this case for trial on October 16, 2023, (Doc. 84), but due to a conflict for Appellee, the trial was rescheduled for December 5, 2023. (Docs. 85-87).

On August 29, 2023, Appellant filed his second amended pretrial exhibit list. (Doc. 90). On September 22, 2023, after review, the District Court determined that three of the listed exhibits would not be admitted at trial. (Doc. 95). The three (3) exhibits stricken were Appellant's Exhibits C[1], D, and M. *Id*. Exhibit C was stricken because it was illegible as filed; D was stricken because it was a letter

[1] This exhibit was admitted at trial, after Appellant cured the issues. (Doc. 187-2 at 1).

from an attorney that was irrelevant and was hearsay; and M was stricken because there were no corresponding Exhibits provided by Appellant. *Id*.

On October 16, 2023, a second Pretrial Conference was held based on objections filed by Appellee to Appellant's second amended exhibit list. (Docs. 96; 99; 110-11). At this Pretrial Conference, the District Court determined that it would subpoena two witnesses on Appellant's behalf, struck several of Appellant's exhibits from his second amended exhibit list, and limited Appellant's witnesses to himself, Sergeant McMillian ("McMillian"), Stefanie Justice ("Justice"), and Ernestine Hayes. *See* (Doc. 110). The District Court also struck Appellant's Exhibits E, F, J[2], K, L[3], N[4], R, S, T, and U. *Id*. at 2.

Appellant moved for reconsideration, which the District Court denied. (Docs. 112; 114). Even though the District Court denied Appellant's motion for reconsideration, it explicitly informed Appellant that "[he] may bring the exhibits to the trial, where further admissibility may be considered in context during the trial." (Doc. 114 at 6). *See also* (Doc. 240 at 16-18, 28-31, 33, 42) (informing Appellant multiple times to bring the exhibits with him to trial, even though they

---

[2] Portions of Exhibit J, (Doc. 90-1 at 28), were admitted at trial. (Doc. 187-3 at 12).

[3]Portions of Exhibit L, (Doc. 90-1 at 37, 41), were admitted at trial over Appellee's objections. (Doc. 187-2 at 61, 63-66).

[4] Portions of Exhibit N, (Doc. 90-1 at 44, 48) were admitted at trial. (Doc. 187-3 at 7, 11).

are being stricken at the time); (Doc. 241 at 17-19) (further informing Appellant of the justifications for bringing the stricken documents to trial).

At the second Pretrial Conference, Appellant also asked for "standby counsel" for the very limited purpose of asking him questions while he was on the witness stand because he claimed his testimony would otherwise be "awkward." (Doc. 240 at 12). No other reason was offered by Appellant. The District Court stated that Appellant's request was not a basis for appointment of counsel. *Id*. at 12-14.

On November 6, 2023, Appellant moved to disqualify the District Court. (Doc. 118). The basis for disqualification was that the District Court presided over Appellant's criminal case over a decade earlier, while the District Court was a Circuit Court Judge in Leon County, Florida. *Id*. No other justification was offered by Appellant for the disqualification.

On the same date, the District Court denied Appellant's motion to disqualify. (Doc. 119). Three days later, the District Court issued an order further clarifying the reasons why disqualification was denied. (Doc. 120).

On November 9, 2023, the District Court ordered a third Pretrial Conference be set on November 17, 2023. (Doc. 123). During the third Pretrial Conference, Appellant indicated that he needed to call two (2) additional witnesses, Kimberly Hauser ("Hauser"), and Cynthia Peterson ("Peterson") at trial. (Doc. 241 at 5-6).

*See also* (Docs. 125; 127). Hauser was never included in any version of Appellant's witness list and Peterson had been removed from previous versions of his witness list. Appellee objected to the inclusion of Hauser. *Id.* at 6-7, 12-13, 19-20. The District Court allowed Appellant to call the additional witnesses, indicated it would attempt to secure Hauser, Peterson, Justice and McMillian's attendance by subpoena on Appellant's behalf, and granted Appellant's oral motion to continue the trial. (Doc. 125). The trial was reset for January 29, 2024. (Doc. 128).

On November 20, 2023, the District Court ordered Appellant to provide a "trial ready" version of his Exhibit V by December 11, 2023, based on concerns expressed by Appellee as to what the exhibit was comprised of. (Doc. 129). *See also* (Doc. 126) (Appellee's motion demonstrating his concerns about Exhibit V). The District Court later elaborated further and informed Appellant of his responsibility to ensure that Exhibit V was understandable as an exhibit. (Doc. 134 at 1-3).

On November 21, 2023, Appellant filed a motion which attempted to exploit the District Court's willingness to subpoena witnesses for him, by requesting that the District Court subpoena six (6) additional witnesses on Appellant's behalf. (Doc. 130). Appellant claimed that he "inadvertently failed to advise the Court of other potential witnesses" during the third Pretrial Conference. *Id*. at 2. None of the witnesses were on Appellant's operative witness list, and at least one of the

proposed witnesses – Jonathan I. Rotstein – had been stricken from Appellant's previous witness list by the District Court. *See, e.g.,* (Doc. 110). On November 21, 2023, the District Court denied Appellant's request and stated the following:

> Identifying witnesses and exhibits is not an evolving process or a moving target. The court will not permit trial by ambush, nor is the door opened to Plaintiff to revisit every Order entered. Plaintiff has already been provided extraordinary leeway in this process, and the Court has agreed to subpoena witnesses for him even though the Court is not required to do so. Plaintiff acknowledges that fact. At this point in the pre-trial process, Plaintiff will not be allowed to continue adding witnesses. Plaintiff is held to the amended witness list he filed on August 14, 2023, as limited by the October 16th Order, and with the addition of two more witnesses Plaintiff identified in the November 17th pretrial conference.
>
> The Court recognizes and agrees with Defendant's concern "for Plaintiff's perpetually amending his exhibit and witness lists." That effort must stop. No additional witnesses will be permitted at this point.

(Doc. 134 at 4) (internal citations omitted).

On December 11, 2023, Appellant finally completed the disclosure of his trial exhibits on both the District Court and Appellee. *See* (Doc. 135).

On January 24, 2024, the parties appeared for the start of a jury trial. Before the start of the trial, Appellee informed the District Court that witness Robert Gould had tested positive for COVID. (Doc. 242 at 5). Based on the COVID concern, the District Court spoke with Appellant about the options available regarding Gould's testimony. *Id*. at 5-21. Appellant insisted that Mr. Gould testify in the courtroom. *Id.* at 9. Ultimately, Appellant requested a continuance of the

trial, and the District Court granted the continuance over Appellee's objections. *Id*. at 21. The trial was continued to June 10, 2024. (Docs. 143-44). A fourth Pretrial Conference was scheduled for April 26, 2024. (Doc. 161).

On February 23, 2024, Appellant attempted to add additional exhibits to his exhibit list two hundred and fourteen (214) days after his exhibits were due, after trial had been reset on two occasions, and despite the District Court's previous orders. (Doc. 157). Appellant's request to further supplement his exhibit list was denied, without awaiting a response from Appellee. (Doc. 158). Appellant then moved for reconsideration of the District Court's order, (Doc. 159), and without providing Appellee with an opportunity to respond, the District Court granted Appellant's motion for reconsideration in part. (Doc. 160).

On April 30, 2024, the parties had a conference to discuss proposed stipulations to exhibits on both parties' exhibit lists. *See, e.g.,* (Doc. 165). During this conference, it became apparent to Appellee that several of Appellant's records were potentially inauthentic or had other objectionable evidentiary problems. *Id*.

After the April 30, 2024, conversation, Appellant filed a motion requesting that the court determine whether his purported exhibits were authentic. (Doc. 167). Appellant's Motion was denied because the District Court determined that the motion requested that the court make decisions which should be left to the jury. (Doc. 169 at 2).

Separately, on May 23, 2024, Appellee filed a motion *in limine* requesting that certain exhibits included on Appellant's exhibit list be excluded from being introduced. (Doc. 170). The District Court initially deferred ruling on Appellee's motion *in limine* to allow Appellant to respond, (Doc. 173), and after Appellant responded, (Doc. 178), the District Court denied Appellee's motion *in limine*. (Doc. 180). The justification for the denial was that Appellant could demonstrate the authenticity of his exhibits, which had not already been stricken, at trial. *Id*. at 5, 7.

At its own expense, the District Court secured the attendance of Hauser, McMillian, and Justice on Appellant's behalf by means of subpoena before the trial. (Docs. 175-77).

**B. Disposition of Trial.**

On June 10, 2024, a trial was conducted in this case. *See* (Docs. 181-89). During the trial, just before *voir dire*, Appellant provided Appellee and the District Court with an entirely new set of exhibits that were numbered and categorized differently from all of Appellant's previous exhibit lists. (Doc. 229 at 16-18). The formatting had changed from a letter to a numbering system, no longer had composite exhibits like Appellant's previous "Exhibit V," and included new exhibits that were not on Appellant's previous exhibit list. *Id*. at 16-17. Included within Appellant's new Exhibits was the "Yates "Request," marked by Appellant

as Exhibit 51, which Appellee objected to. *See* (Doc. 229 at 52-55). Despite Appellant's last-minute changes violating the District Court's previous orders, *see, e.g.,* (Docs. 110; 134), Appellee was able review the exhibits during recess breaks and avoid Appellant causing a third continuance of the trial. (Doc. 229 at 52-55).

On the second day of the trial, Appellee attempted to proffer concerns about several of Appellant's documents. (Doc. 230 at 10-38). At the same time, based on the same concerns, Appellant moved for a mistrial. *Id.* The discussion established that original grievance submissions by inmates are returned to the inmates for them to keep, and a copy is placed in their classification file. *Id*. at 19-21. The parties took competing views about whether the documents discussed were altered by the Florida Department of Corrections or Appellant. *Id*. at 24. *See also Id*. at 58-59 (demonstrating that the District Court provided special instructions about competing documents and the jury's function). The District Court determined that Appellee's concerns did not require court action and denied Appellant's motion for mistrial based on the issues being a matter of consideration for the jury but acknowledged that Appellee had made a strong proffer for his position. *Id*. at 38.

Eventually, Appellant testified, and attempted to introduce Plaintiff's Exhibit 15, (Doc. 230 at 73-80), which later was separated as the Court's Exhibit 1. (Doc. 187-5). In response, Appellee objected to the introduction of the document on authenticity, hearsay, and Rule 403 misleading grounds. (Doc. 230 at 73, 75-

76). The District Court then had a sidebar discussion about the document. *Id*. at 74. During the sidebar discussion, the court overruled Appellee's objections relating to authenticity and 403, *Id.* at 75-76, but asked that Appellant identify an exception that would not make the document hearsay. *Id*. at 76. In response, Appellant argued that the author's unavailability made it subject to potential evidence rule 804 provisions. *Id.* The District Court commended Appellant for the argument, *Id*., but disagreed with his argument, and sustained the hearsay objection. *Id*. at 79. Appellant did not argue that the document was subject to any exception under evidence rule 803, nor did he attempt to lay the foundation for application of the exception to the exhibit.

Later during his case in chief, Appellant attempted to introduce Plaintiff's Exhibit 13, which Appellee objected on authenticity and hearsay grounds. (Doc. 230 at 92-93). The District Court overruled the objection but allowed Appellee to further argue the objection during a later break. (Doc. 230 at 112-13). Appellee argued that Appellant lacked personal knowledge of the purported statements in Exhibit 13, which were trying to be attributed to Appellee, and thus, the document did not meet the requirements of the rules of evidence. *Id*. The District Court stated it understood but disagreed with the objection and allowed the introduction of the document. *Id.*

During the trial, Appellant never requested any accommodation from the District Court nor had difficulty navigating the courtroom. Over Appellee's objections, Appellant was able to introduce all but one exhibit that he sought to introduce throughout the entire trial. (Doc. 187-1). Appellant was allowed to call and question his own witnesses and witnesses listed on Appellee's list. *See generally* (Doc. 187). During Appellant's questioning, he was allowed opportunities to redirect or recross witnesses two, and in some cases, three times. *See, e.g., Id*. at 3-4; (Doc. 229 at 153). After Appellee's motion for directed verdict was denied, *Id.* at 6, a jury verdict was rendered on behalf of Appellee after a two-hour period of deliberation following a four-day trial. *Id.* at 8.

**C. Post-Trial Proceedings.**

On June 21, 2024, Appellant timely moved for a new trial alleging "newly discovered evidence" relating to his Exhibit 13 presented at trial, that Ottinger should have been permitted to testify, and that the jury's verdict was contrary to law or the weight of the evidence. (Doc. 193 at 3-10). The District Court denied Appellant's motion for new trial without requiring a response from Appellee. (Doc. 195 at 2). The District Court determined that the argument relating to "newly discovered evidence" was not well-taken because of Appellant's previous motion asking for evidence to be excluded and Appellee's motion *in limine*. *Id*. at 3 (referencing (Docs. 167; 170)). The District Court also determined that substantial

evidence, which was presented at trial, existed to discredit Appellant's position and that Ottinger would not have tipped the scales because the question ultimately amounted to a jury question. (Doc. 195 at 4-5). Lastly, The District Court determined that Appellant's claims about the jury's decision being contrary to law, or the weight of the evidence, were also untenable because Appellant's concerns ultimately reduced to jury questions that were not contrary to law. *Id*. at 5-8.

On June 27, 2024, Appellee filed a bill of costs pursuant to Federal Law amounting to one thousand three hundred thirty-three dollars and twenty cents ($1,333.20). (Doc. 194). Appellant claimed he was unable to pay the amount incurred by Appellee. (Doc. 196). Although the District Court determined that it was "equitable and appropriate to award allowable costs, it reduced the award by 90%," (Doc. 202 at 3-4), thereby awarding Appellee only one hundred thirty-three dollars and thirty-two cents ($133.32) in costs. *Id*. at 4.

On July 15, 2024, Appellant appealed the decision by the jury. (Doc. 197). Appellant also later appealed the District Court's decision to award Appellee costs, despite the District Court's substantial reduction. (Doc. 206).

**II. Statement of Facts.**

Appellant is a former prisoner who served time in the Florida Department of Corrections ("FDC"). While Appellant was a prisoner, on December 17, 2017, he was transferred to Northwest Florida Reception Center, Annex ("NWFRC"). (Doc.

187-2 at 34). Appellant remained at NWFRC until April 5, 2018, when he transferred to Apalachee Correctional Institution, East Unit ("Apalachee"). *Id*. At the time of his transfer to Apalachee, Appellant was not in any protective custody status. (Doc. 230 at 259).

Before Appellant's transfer to Apalachee, on March 15, 2018, the Institutional Classification Team recommended that Appellant be provided with a negative transfer to Apalachee, which was later approved by the State Classification Office ("SCO") in Tallahassee. (Doc. 187-2 at 9). *See also* (Doc. 230 at 260-61). The reason for the negative transfer was due to Appellant's misbehavior. (Doc. 187-2 at 9). *See also* (Doc. 230 at 260).

Earlier, on April 4, 2018, Appellant submitted a grievance claiming that he was "in fear for [his] safety from other inmates." (Doc. 187-2 at 8). *See also* (Doc. 187-3 at 7). Appellant's grievance was returned without action on the next day because of his transfer. (Doc. 187-2 at 47). *See also* (Doc. 187-3 at 8).

On April 5, 2018, Appellant was transferred to Apalachee. Upon arriving at Apalachee, Appellant was escorted to a holding cell and eventually seen by medical for a pre-confinement assessment. (Doc. 187-2 at 6-7). The pre-confinement assessment occurred at 12:26 PM and indicated that Appellant had five (5) superficial scratches to his upper back. *Id.* at 6-7. Appellant's scratches

were cleansed, and he was released back to security. *Id.* at 6. Appellant was then escorted and placed in a holding cell. (Doc. 231 at 89).

At 5:20 PM, Appellant got the attention of Sergeant Michael Brown ("Brown"). (Doc. 187-2 at 51). *See also* (Doc. 231 at 89). Appellant told Brown that he had been attacked on the bus during his transport from NWFRC but that "he can't identify the inmate." (Doc. 187-2 at 51). Appellant was placed on Protective Management ("PM") based on his April 5, 2018, allegation to Brown; even though he never identified who his attacker(s) were. (Doc. 230 at 264).

Eventually, a trial was conducted on June 10, 2024. During the trial, Appellant wore an eye patch over one of his eyes. *See* Initial Brief at 33 (referring (Doc. 230 at 186)). However, Appellant never complained about any issues during the trial that demanded accommodation for his alleged lack of sight.

On the first day of trial, after the jury selection was completed, and the District Court finished reading the preliminary jury instructions, the District Court and Appellant had the following exchange:

> THE COURT: Please take your seats.
>
> Mr. DeWitt, I saw you hold your hand. So you'll know, what I'm doing is – and you are being incredibly respectful. I always want to get the jury out and the door closed before I put anything on the record.
>
> Yes sir.

> MR. DEWITT: Yes, sir, Your Honor. I want bring to the Court's attention, Juror No. 4, the whole time you was speaking, she was not listening to you. She was playing with her fingernails the whole entire time.
>
> I noticed that she looked up at you a few times, but throughout your whole time you was talking, she was playing wither her fingernail, Your Honor. I don't even think she was listening to you.
>
> THE COURT: All right. I have – as you can tell, I was looking at the jurors. Not all of them make eye contact, not all of them make eye contact in the same way.
>
> I understanding your observation was she was playing with her fingernails. Certainly nobody was sleeping. If somebody had been sleeping, I would have taken a break and had everybody stand.
>
> . . .
>
> At this point Juror No. 4 has not demonstrated to me that she is not participating.
>
> . . .
>
> But at this point I'm certainly not going to strike Juror No. 4 simply because she wasn't making eye contact with me. Quite frankly, it's not unusual that when I'm reading instructions for folks to be looking down or even to be looking down when evidence has been presented, and you can certainly bring that to my attention again.
>
> MR. DEWITT: Yes, sir, Your Honor.

(Doc. 229 at 46-48). Shortly after the exchange, opening statements were conducted. (Doc. 187 at 3). During Appellee's opening statement, he insinuated that Appellant had fabricated or lied about several of the allegations he was going to raise during the trial. (Doc. 229 at 76). Later, based on Appellee's insinuation, Appellant was able to introduce numerous records, including documents that had

been previously stricken. *See, e.g., Id*. at 92-93, 99-103. *See also* (Doc. 230 at 54) ("Consistent with prior rulings as to the hearsay objection, its admitted.").

Eventually, Appellant testified during his case. (Doc. 230 at 44). While Appellant was testifying, he stated he had repeatedly lied about several issues while he was in FDC custody. *Id*. at 99. Appellant explained he lied for years while in FDC's custody because he felt he needed to live alone for his own "safety." *Id*.

Later, Appellee testified during his case. (Doc. 231 at 97). During Appellee's testimony he testified that he had never met with Appellant, that the decision to transfer Appellant was established well before April 5, 2018, that he had not created Plaintiff's Exhibit 13, that there were several problems with the Exhibit, and that he did not know of any protective need for Appellant. *Id*. at 97-116.

During closing, Appellee described Appellant's serious issues with credibility based on Appellant's willingness to lie, (Doc. 232 at 56-61), clear indications of alterations or outright forgeries of documents by Appellant, *Id*. at 61-68, the fact that Appellant did not meet his burden to demonstrate his alleged 1st Amendment or 8th Amendment claims, *Id.* at 71-76, and the likelihood that Appellant's injuries were either nonexistent or self-inflicted. *Id.* at 77-79, 82-83. Based on the arguments presented, the jury found for Appellee. (Doc. 188).

## III. Standard of Review.

Issue one can only be reversed if there was an abuse of discretion. *Bass v. Perin*, 170 F.3d 1312, 1319 (11th Cir. 1999).

Issue two can only result in reversal if there is a "clear abuse of discretion," to the extent that the issue relates to evidentiary matters involving Appellant's proposed witnesses. *U.S. v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001). To the extent that the issue relates to the failure to seek to introduce exhibits, such issues are reviewed only upon a showing of plain error. *U.S. v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008).

The standard of review of the third issue depends on what is being considered by this Court. To the extent that Appellant raises an issue "not raised in the district court and raised for the first time on appeal," the issue "will not be considered by the court" unless this Court first determines it should first exercise its discretion to review the issue. *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016). Review of properly raised arguments presented in the District Court can only be reversed based on an abuse of discretion. *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990).

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion in denying Appellant's request for counsel as the facts surrounding this case are not novel or complex and

Appellant had an opportunity to investigate and present his claims. The District Court did not abuse its discretion in striking Beavers and Ottinger and not allowing Appellant to call the late-disclosed witness House. Furthermore, the District Court did not commit plain error when it refused to allow introduction of an exhibit (Doc. 187-5) and struck another (Doc. 90-1 at 45) by finding both documents constituted hearsay. Finally, the District Court did not abuse its discretion in denying Appellant's motion to disqualify it, and even if the motion should have been granted, its decision constituted harmless error.

## ARGUMENT

### I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DECLINING TO APPOINT APPELLANT COUNSEL.

Parties in civil cases have no right to counsel. *Smith v. Fla. Dep't. of Corr.*, 713 F.3d 1059, 1065 (11th Cir. 2013). Instead, counsel must only be made available to parties under extraordinary circumstances. *Id*. "Appointment of counsel in civil cases is, rather, a privilege 'justified only by exceptional circumstances,' such as the presence of 'facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner.'" *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993). "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position in court." *Id*. "Where the facts and issues are simple, he or she will not need such help." *Id*.

Appellant sought counsel on two occasions: once through a motion for appointment of counsel filed several years after filing his claims, (Doc. 69); the second, during the second Pretrial Conference. (Doc. 240 at 12). Neither request demonstrated a need for counsel because the issues presented in the case are not novel or complex. Appellant was able to present the essential merits of his position in court. Accordingly. the District Court did not abuse its discretion based on the facts presented.

**A. Appellant's claimed blindness does not demonstrate an exceptional circumstance.**

A foundational problem with Appellant's allegations exists: Appellant is not blind. And even if he is legally blind, he was not inhibited at any point during litigation in the District Court. The first claim of blindness was based on Appellant's motion for appointment of counsel, filed seven hundred forty-two (742) days after the filing of his lawsuit. *See* (Doc. 69). Appellant's motion for appointment of counsel is the only indication in the Record that suggests Appellant is blind. The District Court denied Appellant's motion for appointment of counsel because of how late the motion came in the litigation and since Appellant had litigated the case without issue prior to the filing of the motion. (Doc. 71 at 2). In the order denying the motion, the District Court made clear that the issue would be revisited at the final Pretrial Conference, if necessary. *Id*; however, Appellant never raised the issue of blindness ever again.

Later, when Appellant sought counsel for the second time at the second Pretrial Conference, he did not rely on his alleged inability to see. (Doc. 240 at 12). Instead, he limited his request for counsel during his self-questioning to avoid what he perceived as an "awkward" presentation. *Id*.

Throughout the trial, there was no reason for the District Court to believe that Appellant was blind. During trial, Appellant never complained of an inability to see nor did he have difficulty navigating the courtroom. Appellant did not request counsel during the trial based on an inability to see, and there was no basis to believe Appellant could not see during the trial. To be taken as true, Appellant is arguing that Appellant's blindness was obvious and that all participants in the courtroom, including the District Court, ignored his clear inability to see.

Now, Appellant cites cherrypicked examples which purport to demonstrate that Appellant could not see during the trial. *See* Initial Brief at 29-30. Within context, the examples fall apart. For instance, the Initial Brief references a situation where undersigned counsel was introducing an exhibit through Appellant, and in doing so was utilizing an "ELMO" to display it on a computer screen in front of Appellant. (Doc. 230 at 86-87). Initially, the document was zoomed out, and it was difficult to read the small font of Appellee's Exhibit F, *see, e.g.,* (Doc. 187-3 at 13-15), but once zoomed in, Appellant was able to read the document. (Doc. 230 at

130). Appellant was also likely inhibited by the bandage he wore over one of his eyes. *See* Initial Brief at 33 (referencing (Doc. 230 at 186)).

Despite Appellant's claims of blindness, there are two clear examples in the Record which demonstrate that Appellant was able to see. The first example is a video of Appellant used to support Appellee's motion to compel. *See* (Doc. 31 at Exhibit B); (Doc. 210) (demonstrating that the District Court received and transmitted the exhibit as part of the Record). *See also* (Doc. 31-1 at ⁋ 11) (detailing Paralegal Michael Norford's interaction with Appellant). The video demonstrates Appellant's interaction with staff at undersigned counsel's office. During the video, Appellant has no difficulty navigating the area or communicating with staff. Appellant does not have any walking stick or other indicator that he would have difficulty navigating public environments. Appellant also is wearing a mask and doo rag which cover the entirety of his face, except for his eyes. The video demonstrates that Appellant was able to interact with others and did not have difficulty seeing.

The second clear example of Appellant's ability to see occurred during the first day of trial. After jury selection had been completed, Appellant expressed concerns to the District Court about juror number 4, and whether she was paying attention to the District Court's preliminary instructions. (Doc. 229 at 46-48). Specifically, Appellant indicated that it appeared to him that the juror was looking

down and "playing with her fingernail" while the District Court was talking. *Id*. at 47. If Appellant could not see, he certainly would be unable to identify or communicate his concerns to the District Court.

**B. Appellant was able to investigate and present the essential merits of his position in court.**

Appellant was able to adequately investigate and present the essential merits of his position in court. Appellant was able to and did conduct discovery in this case. (Docs. 16; 29). Appellant was allowed to thoroughly litigate the issues surrounding his exhibits and witnesses by submitting numerous amendments to his lists. (Docs. 64; 67; 70; 79; 82; 90; 130; 157). Some of Appellant's witnesses were also secured, on his behalf, by the District Court. (Docs. 175-77). Even when exhibits were stricken, the District Court reminded Appellant to bring the documents to trial anyway, (Docs. 114 at 6; 240 at 16-18, 28-31, 33, 42; 241 at 17-19), which Appellant did, and he was able to admit the exhibits at trial despite previously being stricken. (Docs. 187-2 at 61, 63-66; 187-3 at 7, 11, 12). Appellant was even able to call previously unidentified witnesses. (Doc. 241 at 5-6).

During the trial, Appellant was able to thoroughly present his case. Appellant was able to introduce into evidence all but one exhibit. *See* (Doc. 187-1). The District Court entertained argument about the only non-admitted exhibit, and commended Appellant on his argument. (Doc. 230 at 73-80). Appellant testified on three separate occasions during the trial and was able to thoroughly present his

position during his testimony. *See generally* (Doc. 187). Appellant was given numerous occasions to conduct redirect and recross of witnesses, *see generally Id.*, even though the District Court acknowledged that such practice was generally not appropriate. (Doc. 231 at 128). The District Court ensured that Appellant was given a fair and adequate opportunity to investigate his claims and present his evidence.

**C. Appellant's claims are not factually or legally complex.**

Appellant's claims are not factually or legally complex. At its foundation, Appellant's case amounts to a common prisoner case which alleges that Appellee transported him without protection because of a dislike of Appellant. (Doc. 67 at 2-4). Appellant claims that Appellee's actions were retaliatory and deliberately indifferent to his protection needs. *Id*. Based on an alleged attack, Appellant claims Appellee is liable for his alleged injuries. *Id.* at 4-6. In response, Appellee disputed all of Appellant's claims, including the fact that he was attacked and injured. (Doc. 63 at 1-4). Cases like Appellant's are legion among inmates, and there is nothing unusual or unique about the claims.

Any complexity in Appellant's case stems from a fundamental problem with his claims: a complete lack of evidentiary support. Due to the absence of evidentiary support, Appellant altered and fabricated evidence to support his claims. *See* (Doc. 232 at 61-68) (detailing alterations to (Doc. 187-2 at 63) based

on comparison with *Id*. at 64; alterations to *Id*. at 65 in comparison with a version in FDC's possession (Doc. 187-3 at 6) and separate grievances submitted in *Id.* at 11, 12, and 15; and fabrication of (Doc. 187-2 at 10)). The most telling example of an altered document is demonstrated by a comparison between two of Appellant's exhibits:

> Dear Off. House: (1) Can you please verify that on today's date(6/21/17), you witnessed(heard), "other inmates" make threats against me(that they are going to kill me when they catch me); (2) Can you please verify that on today's date(6/21/17), you witnessed me forward through the inmate grievance process a two (2) page "informal grievance request" along with a copy of a "United States Postal Service receipt" to the Mailroom Supervisor Ms. Ivins at the Graceville Correctional Facility seeking reconsideration of the denial of previously forwarded Complaints regarding priority mail being sent to me at the GCF that I did not receive, and other Complaints(same issue), prior to 6/21/17(to person). Thank you & God bless.
>
> Note: This request was written on 6/21/17, but was signed by officer R. House on 6/22/17.

(Doc. 187-2 at 63)[5] (above).

> Dear Off. House,
>
> Can you please verify that on today's date(6/21/17), you witnessed me forward through the inmate grievance process a two (2) page "informal grievance request" along with a copy of a "United States Postal Service receipt" to the Mailroom Supervisor Ms. Ivins at the Graceville Correctional Facility seeking reconsideration of the denial of previously forwarded Complaints regarding priority mail being sent to me at the GCF that I did not receive, and other Complaints(same issue), prior to 6/21/17(to person). Thank you & God bless.

[5] During the trial, the original version of this exhibit was entered into evidence. The original was forwarded to this Court for review on appeal as part of the Record. *See* ECF 18.

(Doc. 187-2 at 64) (above). The first exhibit is a photocopy of the original document that was in Appellant's possession.[6] The entered original exhibit demonstrates the use of whiteout and alterations to the original that are not included in *Id*. at 64, a copy of the original submission to FDC.

The alterations and fabrications were first discovered by Appellee on April 30, 2024, during a meeting with Appellant. (Doc. 165). Based on the problems, Appellee moved to exclude the problematic documents, *see, e.g.,* (Doc. 170), which were introduced over his objections. As a result, Appellee argued about the problems with the documents, and the jury agreed with Appellee based on its verdict. (Doc. 188).

Appellant now complains about the complexity he caused by his alteration or fabrication of documents, but Appellant should not be allowed to benefit from his own actions. Had Appellant not altered or fabricated documents, the case is extremely straightforward and simple, and neither of Appellant's motions demonstrate otherwise.

---

[6] Pursuant to FDC's Administrative Regulations, the original submitted documents are returned to inmates after submission, with FDC retaining a copy for placement in the inmate's file. *See* (Doc. 230 at 19-21) (referencing § 33-103.005(4)(c), Fla. Admin Code).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION OR COMMIT PLAIN ERROR IN DECLINING TO ALLOW APPELLANT TO CALL ADDITIONAL WITNESSES OR INTRODUCE DOCUMENTS CONSTITUTING HEARSAY.

Appellant's second issue relates to exclusion of witnesses that would have provided irrelevant testimony or witnesses which were not properly disclosed. *See* Initial Brief at 40-51. The witnesses comprise a records custodian (Beavers), a fact witness with no knowledge of the underlying facts at issue during trial (House), and a purported expert witness (Ottinger). *Id*.

Plaintiff's second issue also details two pieces of evidence which he alleges he should have been able to introduce. Initial Brief at 51-56. The first piece of evidence involved a document which Appellant claimed was offered by a deceased witness. *Id*. at 51-53. The second piece of evidence was an alleged statement by an officer (R. Yates) which occurred nearly a year before the incident and had no connection to Appellant's claims. *Id*. at 54-55. The District Court did not err in excluding any of the witnesses or exhibits.

### A. The District Court properly excluded the witnesses.

The District Court did not err in excluding any of the witnesses claimed by Appellant. In determining whether the District Court erred, this Court reviews the decisions made based on whether it clearly abused its discretion. *Novaton*, 271 F.3d at 1005. Additionally, this Court can affirm the District Court's decision on any basis supported by the Record. *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957).

1. Beavers as a witness.

The first witness that Appellant claims should have been allowed to testify at trial is Beavers. According to Appellant, Beavers' purpose was to testify about documents in his classification file, and Beavers "would have explained 'the redaction' of certain records in Warden Maddox' possession, as 'compared to the original non-redacted document[s]' that Mr. DeWitt planned to introduce at trial." Initial Brief at 53. There are several problems with Appellant's position.

First, a different individual provided a declaration stating that he is the records custodian for Appellant's records. See (Docs. 170-2 at ⁋ 3; 170-14 at ⁋ 14). Even though Appellant proffers that Beavers could testify about Appellant's classification file, the Record is silent about whether Appellant's assertions about Beavers are correct. As the Record demonstrates that a different individual is the records custodian of Appellant's classification file, the District Court correctly struck Beavers as a witness.

Second, even if Beavers was the correct witness to testify about the issues Appellant proffered, his testimony is limited in nature. Based on Appellant's proffer about Beavers' testimony, he would have testified only to what documents were included within Appellant's classification file. (Doc. 79 at 1-2). There is no indication that Beavers has any knowledge of documents not included in Appellant's classification file. Likewise, there is no indication that Beavers has

ever worked with Appellee or that he would have any knowledge of any actions taken or not taken by Appellee. Beyond the documentation found in Appellant's classification file, Beavers has no personal knowledge of the claims.

Appellant also incorrectly assumes that Appellee had knowledge about what was within and had "possession" of Appellant's classification file. There is no evidence that Appellee knew of every inclusion in Appellant's classification file. There is also no indication that Appellee ever had possession over Appellant's classification file or had the opportunity to change or remove any documents. Beavers would not be able to testify about any of these issues.

Third, Appellant's statements about Beavers' testimony are rebutted by sworn testimony from the custodian of Appellant's records. *See* (Docs. 170-2; 170-14). The records custodian is explicit in stating that several of the documents which Appellant claims he submitted constituted altered versions of documents found in Appellant's classification file or were not found in the classification file at all. *See* (Docs. 170-2 at ⁋⁋ 4-6; 170-14 at ⁋⁋ 3-5). Any records custodian would have testified consistently.

Fourth, Appellant was able to introduce all but a single exhibit at trial without the need for Beavers' testimony. *See* (Doc. 187-1). The only piece of evidence which was not allowed to be introduced was a document that was not found in Appellant's classification file. *Compare* (Docs. 170-1; 170-2 at ⁋⁋ 4-5)

*with* (Doc. 187-5). The fact that the document was not in Appellant's classification file was undisputed at trial and further supported by the testimony of the records custodian. (Doc. 170-1 at ¶¶ 4-5).

Fifth, Appellant did not include Beavers on his initial witness list, nor did he seek to call Beavers at any point after the District Court struck him. Beavers first appeared as a witness in Appellant's amended witness list, at which point the District Court struck him as a witness. (Docs. 79; 83). When Beavers was stricken, he was not the only individual prevented from testifying; instead, other witnesses were also stricken but were allowed to testify after Appellant made an appropriate proffer for them. *See, e.g.,* (Docs. 83; 125; 241 at 5-6). Notably, Appellant never made an additional proffer about Beavers, despite making such proffers for other witnesses. *See e.g.* (Doc. 130). Beavers was neither a key nor necessary witness, and the District Court did not abuse its discretion in striking him from Appellant's witness list.

2. House as a witness.

The second witness that Appellant claims should have been allowed to testify is House, a late-disclosed witness. Initial Brief at 45-49. In determining whether the District Court abused its discretion, this Court considers "the explanation for the failure to disclose the witness, the importance of the testimony,

and the prejudice to the opposing party [if the witness had been allowed to testify.]" *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008).

In explaining why Appellant did not include House on his amended witness list, Appellant stated that he understood a previous District Court order to require reduction of witnesses on his list. *See* Initial Brief at 45-46 (referencing (Doc. 241 at 6)). Appellant's *ad hoc* justification does not demonstrate a viable reason for why House was not on his amended witness list. As the District Court stated when Appellant provided the justification, it did not require or order Appellant to reduce his witness list, *Id.*, but instead required Appellant to demonstrate mandatory requirement that the testimony is relevant and necessary for presentation at trial. (Doc. 65 at 3-4). Appellant's reading of the District Court's order strains credulity given that the District Court merely stated what the law requires.

Appellant's description about the importance of House's testimony is overstated. Based on Appellant's description of House's purported testimony, (Docs. 64 at 4; 130 at 4), coupled with the only known exhibit related to House, (Doc. 187-2 at 63-64), Appellant oversells the significance of House as a witness. When taking a lenient view of Appellant's position, a review of the Record demonstrates that House may have testified to threats posed to Appellant by unknown individuals almost a year before the facts at issue here. *Id*. The alleged threats occurred when Appellant was incarcerated at Liberty Correctional

Institution ("Liberty"), *see* (Doc. 187-2 at 34). There is no indication that House has knowledge of any facts surrounding the April 4, 2018, transfer. It is undisputed that the threats resulted in Appellant being placed in PM while at Liberty, but the need to protect Appellant elapsed by April 5, 2018, and Appellant was not on PM at the time of the incident. (Doc. 230 at 259).

More importantly, the main purpose of House's testimony at trial was accomplished without his testimony. Plaintiff's Exhibits 81 and 82 were introduced at trial and considered by the jury. (Doc. 187-2 at 63-64). Appellant had the opportunity to argue about the contents of the Exhibits related to House, and did so. (Docs. 230 at 53-60). Even if House did testify, due to the clear alterations included on Exhibit 81, *see* Section I-B, *supra*, it is likely that House's testimony would have been *unfavorable* to Appellant. House's testimony was not integral or important in presenting Appellant's claims.

Finally, despite Appellant claiming that Appellee would not be prejudiced by the inclusion of House as a witness, Initial Brief at 48-49, Appellant is wrong. House was not disclosed as a witness by the first date of trial. It is fortunate for Appellant that the trial was continued over Appellee's objections, (Doc. 125), but Appellee had prepared for the trial under the belief that House would not testify. It was only *after* the trial had been continued because the District Court indicated it would subpoena additional previously undisclosed witnesses on behalf Appellant,

(Doc. 125), that Appellant tried to take advantage of the situation and have the court subpoena House on his behalf. (Doc. 130).

Appellant also argues that Appellee could have deposed House, and so was not prejudiced based on the inclusion. Initial Brief at 48. Appellant's assertion is unfounded. Discovery had closed months earlier, *see* (Docs. 16; 29), and Appellee had prepared for trial based on Appellant's identified witnesses prior to the continuance over Appellee's objections. Appellee relied on Appellant's intentional decision to no longer list House when he prepared for trial.

3. <u>Ottinger as a witness.</u>

The final witness that Appellant claims he should have been able to call is Ottinger. Initial Brief at 49-51. According to Appellant, he "had long hoped to present an expert at trial, anticipating that the defense would challenge the authenticity of his exhibits – most notably, the Peterson Memorandum." *Id*. at 50 (referencing (Docs. 79 at 4; 187-5 at 1)). Even though he had "long hoped" to call an expert witness, Appellant did not disclose Ottinger by the required expert disclosure deadline, *see, e.g.,* (Doc. 16 at ⁋ 2(c)), and only disclosed the witness for the first time on his initial witness list. (Doc. 64). When Appellant finally disclosed Ottinger, he did not provide any expert opinions or conclusions, as required by Federal Rule of Civil Procedure 26(a)(2). Instead, compliance with the Federal Rules only occurred for the first time <u>**after**</u> the trial had concluded. (Docs. 193-4;

193-5). Based on the failure to disclose, the District Court correctly struck Ottinger.

Further compounding the problem is that due to Appellant's extremely late disclosure and lack of report about Ottinger's expected testimony, Appellee had no opportunity to challenge the credentials or findings of Ottinger pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). At the time of disclosure, it was completely unknown what Ottinger's credentials or testimony consisted of. A review of the Ottinger's Curriculum Vitae ("CV") disclosed *after* the trial leads to substantial questions about whether Ottinger is qualified to provide expert testimony. *See* (Doc. 193-5 at 2).

Ottinger's purported credentials demonstrate that she has no educational background in the area she purports to be an expert in. (Doc. 193-5 at 2). The CV further states in conclusory fashion that Ottinger was involved in an "apprentice program" for two years with "one of the leading court-qualified document examiners in the U.S." *Id*. Ottinger's report further states, in conclusory fashion that she "attended workshops and seminars on various aspects of [d]ocument [e]xamination." *Id*. The descriptions require that Appellee challenge Ottinger's sufficiency as an expert.

Ottinger's late-disclosed report is also completely absent as to what techniques were utilized beyond common sense, to justify qualifying her as an

expert to offer her opinions. *See, e.g.,* (Docs. 193-4; 193-5). Ottinger's "opinions" appear to be based on noting more than what a lay witness could testify to and do not offer anything even approaching scientific or other specialized principles. Appellee never had the opportunity to explore the deficiencies with Ottinger's purported testimony or credentials.

Even if Appellant's failure to comply with the Federal Rules of Civil Procedure can be excused, the District Court correctly determined that Ottinger would not have tipped the scales. (Doc. 195 at 4-5). The "expert report" demonstrates that Ottinger never reviewed original documents and was basing her opinions on copies. (Docs. 193-4 at 3; 193-5 at 4). The expert report's conclusions are that Plaintiff's Exhibits 79 and 81, (Doc. 187-2 at 61, 63), were the "original documents," (Docs. 193-4 at 5; 193-5 at 3), which was not a fact ever in dispute. The conclusions make a gigantic leap of logic by finding that (Doc. 187-2 at 10) "was not prepared by Steven Dewitt." (Docs. 193-4 at 5; 193-5 at 3). The leap offered cannot be justified based on the simple determinations offered. The District Court did not abuse its discretion in excluding Ottinger.

**B. The District Court properly excluded Appellant's exhibits.**

The final argument that Appellant makes is that the District Court improperly excluded evidence at trial and struck a separate exhibit from Appellant's exhibit list. Initial Brief at 51-56. Appellant offers the same

justifications for both exhibits. *Id*. However, neither exhibit could have been introduced at trial by Appellant.

1. <u>The Peterson Memorandum</u>.

The first document that Appellant claims that he should have been allowed to introduce at trial is what he refers to as the "Peterson Memorandum." *See* Initial Brief at 51-53. *See also* (Doc. 187-5) (consisting of the "Peterson Memorandum"). The evidence at issue is a document allegedly created by Peterson on behalf of Appellant and delivered to Appellant under suspicious circumstances. (Doc. 230 at 73-74, 80). When Appellant attempted to introduce the document into evidence, Appellee objected based on authenticity, Federal Rule of Civil Procedure 403 as misleading, and hearsay. *Id.* at 73-80. In response, Appellant argued that the document was not hearsay because he claimed it was a dying declaration and the District Court additionally considered whether it was a statement against interest. *Id*. Appellant did not make any other argument for introduction of the document as an exception to hearsay. The District Court determined that the hearsay objection should be sustained. *Id.* at 79. Appellant then inquired whether the document could be introduced if used in manner that did not constitute hearsay, and the District Court was unclear whether Appellant could do so, but Appellant never sought to introduce the document for any other purpose. *Id*. at 79-80.

On appeal, Appellant now claims that the document is a record of regularly conducted activity and should have been introduced. *See* Initial Brief at 51-53. For a document to be introduced under the referenced exception, the requirements of Federal Rule of Evidence 803(6) must be met. *See* Fed. R. Evid. 803(6). The required foundation, as dictated by the evidentiary rules is that

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The problem for Appellant is that the record does not meet the requirements of Rule 803(6) as requirements (B) and (D) are not met, and Appellee has demonstrated adequate concerns under (E). Prior to trial, Appellee filed his motion *in limine* which demonstrated concerns with the Peterson Memorandum. *See* (Doc. 170 at 5-8). Appellee challenged the Peterson Memorandum on both authenticity and hearsay grounds. *Id*. The District Court denied Appellee's motion *in limine* after it determined that Appellant could meet

the threshold requirement of authenticity, but the District Court never ruled on Appellee's hearsay objection. *See* (Doc. 180). However, Appellee's motion demonstrated the problem with the Peterson Memorandum being admitted under Rule 803(6). *See* (Doc. 170 at 8).

More specifically, the FDC records custodian's testimony confirmed that the Peterson Memorandum was never kept in the regular course of business. *See* (Doc. 170 at 8) (referencing (Doc. 170-2 at ⁋⁋ 4-5)). Therefore, Appellant could not meet the requirement of subsection (B). Additionally, there were serious concerns about the trustworthiness of the document, thereby preventing subsection (E) from being met. *See* (Doc. 170 at 5-8). Appellant knew about the arguments which prevented introduction of the Peterson Memorandum under 803(6) *prior to* the trial in this case, which is why he did not try to introduce the document through the exception.

Moreover, Appellant completely fails to meet the burden required by subsection (D). Appellant never had a records custodian testify about the document, and the only qualified witness to testify about the creation of the document, Peterson, was dead. The declaration provided in support of Appellee's motion *in limine* demonstrates that Appellant could never meet subsection (D).

Appellant also suggests that the Peterson Memorandum could be introduced for a purpose that was not hearsay, specifically notice to Appellant, *see* Initial Brief at 55; however, Appellant never tried to lay the foundation for this basis at any

point in the trial. It is also unlikely that such notice could exist because of the extremely suspicious circumstances surrounding the delivery of the Peterson Memorandum and the fact that Appellant was the only individual to purportedly possess the document. *See* (Doc. 230 at 73-74, 80).

2. The Yates Request.

The second document that Appellant claims should have been introduced at trial is a document he refers to as the "Yates Request." *See* Initial Brief at 54-55. *See also* (Doc. 90-1 at 45) (consisting of the "Yates Request"). The record purports to be a statement from an "R. Yates" which refers to actions allegedly taken by Appellant several months before the incident at issue.. *Id*. The document was originally stricken by the District Court as hearsay. (Doc. 110 at 2). However, even though the exhibit was stricken as hearsay, the District Court reminded Appellant to bring all his exhibits to trial, as there was the possibility that the exhibits could be introduced for other reasons. (Docs. 114 at 6; 240 at 16-18, 28-31, 33, 42; 241 at 17-19). Appellant listened to the District Court, and brought the Yates Request to trial, which was marked as "Exhibit 51" on his trial day exhibits.

Despite marking the Yates Request as Plaintiff's Exhibit 51 for use, Appellant never discussed or attempted to introduce the exhibit at any point during the trial. Appellant's failure to try to move the Yates Request into evidence at trial

precludes Appellant from arguing about its introduction now. As a result, this Court should not even review Appellant's concern about the Yates Request.

However, if this Court determines that it should review whether the Yates Request should have been allowed to be introduced, Appellant still fails. As with the Peterson Memorandum, Appellant argues that the Yates Request is a record of regularly conducted activity or could be used for a purpose that was not hearsay. Initial Brief at 54-55. The same and more problems exist with the Yates Request as with the Peterson Memorandum.

As with the Peterson Memorandum, Appellee's motion *in limine* also sought to preclude introduction of the Yates Request. *See* (Doc. 170 at 21-23). Appellee's motion argues that not only is the document inauthentic and hearsay but also argues that the document is not relevant and if introduced, would confuse the issues under Federal Rule of Evidence 403. *Id*. Like with the Peterson Memorandum, the District Court never considered the evidentiary objections raised by Appellee in his motion *in limine*. *See* (Doc. 180). *See also* (Doc. 173) (indicating that Appellant was only required to respond to arguments about certain exhibits).

Prior to reaching the question of hearsay, the Yates Request must be relevant and not violate Rule 403. The Yates Request offends both concerns. The Yates Request was submitted by Appellant in September 2017 about issues in July 2017.

*See* (Doc. 90-1 at 45). The incident at issue in this case occurred several months later in April 2018. The document has no relation to the facts of this case and would only confuse the issues present in this case because Appellant was no longer on PM. (Doc. 230 at 259).

Even if the document is determined to be relevant and does not offend Rule 403, the document is still hearsay. The document fails for the same reasons as the Peterson Memorandum because it is not a record of regularly conducted activity because FDC has no record of the document, (Doc. 170-14 at ¶¶ 4-5), Appellant did not and could not meet the requirements of subsection (D), and there are concerns about the trustworthiness of the document based on clear authenticity issues.

Now, Appellant claims that the document could be utilized for a purpose that is not hearsay by claiming that it provided notice to Appellee. Initial Brief at 54. The problem is that Appellant never attempted to establish the foundation for such an introduction at trial or at any other point during the litigation. Even if Appellant did try to introduce it for the purpose of notice there is no evidence to support the basis for introduction that is now espoused. No evidence exists in the Record that Appellee was aware of the Yates Request. As a result, the District Court did not err in not allowing introduction of either the Peterson Memorandum or Yates Request.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT IT DID NOT NEED TO DISQUALIFY ITSELF.

Appellant's final issue relates to his claim that the District Court should have recused itself from his case based on new facts and evidence raised for the first time on appeal, Initial Brief at 58-60, based on the reasons described in his motion to disqualify, *Id*. at 56-58, and the District Court's actions in resolving the motion. *Id*. at 60-62. This Court should not consider the new justifications presented by Appellant, and none of the reasons presented require disqualification. Even if disqualification was required, the District Court's failure to disqualify itself amounts to harmless error.

### A. Appellant's newly presented evidence should not be considered by this Court.

On November 6, 2023, Appellant moved to disqualify on the basis that the District Court presided over Appellant's criminal case over a decade earlier, while the District Court was a Florida Circuit Court Judge in Leon County, Florida. (Doc. 118). No other justification was offered by Appellant for the disqualification.

However, on appeal, Appellant offers an additional argument for why the District Court should have recused itself by claiming that the District Court had "knowledge of specific FDC officials – including Yates – who were relevant to the current case" stemming from a letter which was never considered by the District Court in this case and Appellee had no knowledge of. *See* Initial Brief at 58-60.

More specifically, Appellant alleges that based on the letter, the District Court "sent a copy of Mr. DeWitt's letter to the FDC Inspector General." *Id*. at 59.

No citation is offered for the submission by the District Court because the document itself is not part of the Record in this case, nor is it a docket entry in the separate case cited by Appellant. *See* Initial Brief at 58-59 (referencing *DeWitt v. Florida*, No. 4:15-cv-433 (N.D. Fla. Aug. 17, 2017)). The **only** location that a copy of the submission that the District Court allegedly sent can be found is attached to Appellant's previously denied "Motion for Substitution" in this appeal. *See* ECF 43 at 22.

To consider the new evidence and argument presented by Appellant, this Court first must determine that it should exercise jurisdiction over the issue. *Blue Martini Kendall, LLC*, 816 F.3d at 1349. "As a general rule, an issue 'not raised in the district court and raised for the first time in an appeal will not be considered by this court.'" *Id*. The general rule "preserves judicial resources and hews to the 'essential nature, purpose, and competence of an appellate court.'" *Id.* "The question of whether to hear a claim not raised in the district court is ultimately one that falls within the sound discretion of the Court." *Id.*

This Court has "identified five situations in which it may be appropriate to deviate from the standard rule of practice," which are:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it

> would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below where the proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Blue Martini Kendall, LLC*, 816 F.3d at 1349. The problem for Appellant is none of the situations are applicable here. The issue is not a pure question of law and instead is entirely discretionary. *McWhorter*, 906 F.2d at 678. Nor would a miscarriage of injustice ensue by not considering the new evidence. Appellant had every opportunity to raise the issue, as he was the movant for the attempt to disqualify the District Court. *See* (Doc. 118). The issue is clearly not beyond any debate about whether the District Court's failure to consider its own actions in submitting Appellant's letter would require disqualification. *See* Section III-B, *infra*. Finally, the issue does not encompass a significant question of general impact or of great public concern. As a result, this Court should not consider Appellant's newly presented issue relating to Appellant's letter.

**B. None of the allegations demonstrate a need for disqualification.**

To disqualify the District Court, Appellant must demonstrate that its "impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2026). To meet his burden, Appellant must demonstrate "[that] an objective, disinterested, lay

observer fully informed of the facts underlying the grounds on which recusal would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). "Ordinarily, a judge's rulings in the same or a related case may not serve as the basis for a recusal motion." *McWhorter*, 906 F.2d at 678. "An exception to [the] general rule occurs when the movant demonstrates 'pervasive bias and prejudice.'" *Id.*

Based on Appellant's perception that that the District Court raised its voice and ruled against him in relation to evidentiary matters, Appellant argues that the District Court must have been biased because it had previously presided over his criminal convictions. *See* (Doc. 118). Appellant's reasoning for disqualification has nothing to do with the fact that the District Court presided over Appellant's criminal convictions. Instead, Appellant's motion resulted from his lack of satisfaction with the District Court's legal decisions and intent to have a clean transcript. *See, e.g.,* (Doc. 240 at 40-42) (involving the allegations made by Appellant in his motion to disqualify). The District Court made clear that its intent was to ensure that the transcript of the Pretrial Conference was clear, but due to Appellant's constant interruptions while the District Court was speaking, *see, e.g., Id.* 6, 12, 14, 21, 24, 26, 29, 31, 35, 39, it was having difficulty accomplishing its goal.

Further, the timing of Appellant's motion to disqualify is instructive of Appellant's clear motivations relating to decisions of the District Court. Appellant's request for disqualification was filed, eight hundred and thirty-three (833) days after filing his complaint, and twenty-nine (29) days before trial was set to begin. (Doc. 118). The request to disqualify also came after the District Court finally refused to allow Appellant to perpetually amend his witness and exhibit lists. *See* (Docs. 112; 114) (consisting of Appellant's motion for reconsideration and the District Court's denial of the motion).

Appellant's complaints do not demonstrate that disqualification was required as his complaints consist of "judicial rulings, routine trial administration efforts, and ordinary admonishments . . . to counsel and witnesses." *Liteky v. U.S.*, 510 U.S. 540, 556 (1994). All the decisions "occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Id*. (emphasis in original). Like in *McWhorter*, "[t]he alleged bias is judicial rather than personal in nature" and cannot be utilized to support a finding of disqualification. *McWhorter*, 906 F.2d at 678-679. *See also Christo v. Padgett*, 223 F.3d 1324, 1333-34 (11th Cir. 2000) (finding that judicial remarks and a reversal in a previous case involving the same judge and party did not justify recusal). The decision by the District Court was not an abuse of

discretion as no "objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal would entertain a significant doubt about [its] impartiality." *Parker*, 855 F.2d at 1524.

Additionally, the issue raised by Appellant related to the District Court's "clarification order," Initial Brief at 60-62, does not demonstrate that recusal was necessary, and instead is a red herring. The sequence of events relating to the handling of Appellant's motion for disqualification is important, as absent from the sequence of events is the fact that Appellee was not provided with an opportunity to respond to Appellant's Motion. Had Appellee responded to the motion to disqualify, the facts that Appellant complains about would have been presented to the District Court in addition to and as support for the legal justification for denial based on Appellant's allegations stemming from judicial rulings. The facts that Appellant complains of would have been before the District Court if Appellee had responded to the motion.

Even coupling the District Court's actions with the allegations in the motion to disqualify, Appellant still does not demonstrate "[that] an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal would entertain a significant doubt about the judge's impartiality." *Parker*, 855 F.2d at 1524. The decisions Appellant takes issue with are judicial decisions, which are not justifications for disqualification. The fact that the District

Court went down memory lane and determined that it had no real involvement with Appellant's criminal case would not cause an objective lay observer to significantly doubt the District Court's impartiality.

Appellant's allegations also do not demonstrate "pervasive bias and prejudice." *McWhorter*, 906 F.2d at 678. Appellant's motion to disqualify is clear that his belief is based on the behaviors and rulings of the District Court during the October 16, 2023, Pretrial Conference. *See* (Doc. 118). Appellant makes no demonstration of pervasive bias and prejudice against him because of the decisions by the District Court. At times, the District Court bordered on advocating for Appellant, such as when it allowed Appellant to call witnesses that Appellee had no knowledge of, (Doc. 241 at 5-6), over Appellee's objections, *Id.* at 6-7, 12-13, 19-20, when it continued the trial to secure the witnesses over Appellee's objections, (Doc. 125), and later secured the witnesses on behalf of Appellant, (Docs. 175-77), all during the third Pretrial Conference. The District Court did not abuse its discretion in declining to recuse itself.

Finally, even if this Court entertains Appellant's newly raised justification for disqualification, *see* Section III-A, *supra*, Appellant still does not demonstrate an abuse of discretion by the District Court. "Ordinarily, a judge's rulings in the same or a related case may not serve as the basis for a recusal motion." *McWhorter*, 906 F.2d at 678. Appellant's arguments related to the District Court's

decision to send a letter to the Inspector General ("IG") for FDC about a related case[7] does not demonstrate an independent basis for recusal. *See, e.g.,* Initial Brief at 58-60 (referencing ECF 43 at 22).

Appellant's claim that the District Court had personal knowledge of his allegations is inaccurate. There is no indication in the letter referenced by the Initial Brief that the District Court knew of the sufficiency of the allegations in the letter. The District Court was not present during the allegations included in the letter, and only merely forwarded Appellant's allegations, without knowing the sufficiency of the allegations, to FDC's IG. Tying the District Court's act of forwarding the letter to demonstrating personal knowledge is a leap of logic unjustified by the circumstances.

**C. Even if disqualification was required, the District Court's failure to disqualify itself amounted to harmless error.**

The District Court's decision must also be greater than harmless error for Appellant to succeed on his third presented issue. *Parker*, 855 F.2d at 1526. In determining whether harmless error exists, courts are required to weigh "(1) the risk of injustice to the parties in the particular case; (2) the risk that the denial will

---

[7] The term "related" is used very liberally because the case in which Appellant's letter was filed does not have any relation to the claims in this appeal or the District Court. The letter, submitted by Appellant, had no bearing on the facts of the case it was filed in, prompting the Magistrate Judge in the case to inform Appellant that he should not file any additional letters in the case. *See DeWitt*, No. 4:15-cv-433 at (Doc. 46).

produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process." *Id.* at 1526 (citing *Liljeberg v. Health Serv. Acq. Corp.*, 486 U.S. 847, 860-66 (1988)). As stated by the Supreme Court,

> As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance. There need not be a draconian remedy for every violation of § 455(a).

*Liljeberg*, 486 U.S. at 862.

None of the factors favor entire disqualification of the District Court based on the reasons stated by Appellant. The only stated basis for disqualification in the District Court was that it had very briefly presided over Appellant's criminal convictions. *See* (Doc. 118).

As has already been made clear, Appellant's reasoning for disqualification has nothing to do with the fact that the District Court presided over Appellant's criminal convictions and instead resulted from Appellant's lack of satisfaction with the District Court's legal decisions and the District Court's intent to have a clean transcript. *See* Section III-B, *supra*. Based on the clear reasoning for Appellant's motion, the risk of injustice to him due to the District Court's decisions on October 16, 2023, is minimal. The District Court considered Appellant's evidence at trial during its introduction and allowed all but one exhibit into evidence. *See* (Doc. 187-1). The District Court subpoenaed witnesses on behalf of Appellant, (Docs. 175-77), even though it noted that no other court would do so. (Doc. 241 at 13).

Appellant was allowed to amend his witness list and call new witnesses at trial *after* the original trial date, over Appellee's objections. (Doc. 125). The District Court did not scold Appellant in front of any fact finder at the hearing and went to great pains to avoid scolding Appellant in front of the jury at the later trial. Finally, this Court is reviewing the claimed evidentiary problems that Appellant takes issue with. There is no realistic risk of prejudice to Appellant based on his argument presented in the District Court.

Moreover, even if Appellant's second argument is considered by this Court, *see* Section III-A, *supra*, there still exists no basis for disqualification. There is no indication during the proceedings in the District Court that it remembered the letter it sent years prior. Contrary to Appellant's claims, the District Court has no personal knowledge of the allegations raised in Appellant's letter. *See* Section III-B, *supra*.

Likewise, the denial of Appellant's relief, namely disqualification of the District Court, and a new trial, will not produce injustice in other cases. As discussed in *Parker*, if the evidentiary rulings are upheld on appeal, disqualification would be pointless. *Parker*, 855 F.2d at 1526. The mere fact that a judge may have presided over a previous case involving a plaintiff does not, in itself, demonstrate injustice for Appellant. Instead, injustice would result if Appellant's position were adopted. Appellant's position leads to the conclusion

that a judge must not hear a case involving a former plaintiff thereby limiting what claims specific judges can hear based purely on previous unrelated cases.

Finally, the public's confidence would not be undermined if the District Court's decision not to recuse itself is affirmed. It is reasonable to expect that a judge may hear multiple cases with the same party, and the mere fact that the judge presided over a former criminal case would not lead the public to believe that the judge should not preside over a party's later case. There is no lack of confidence in a judge's decisions merely because a party previously appeared in a separate case before the judge.

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that this Court affirm the decision of the jury.

Respectfully Submitted,

**JAMES UTHMEIER**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

/s/ Erik Kverne
Erik Kverne
Corrections Practice Manager – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE

4. This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains **12,973** words.

5. This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Erik Kverne
Erik Kverne
Corrections Practice Manager – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Answer Brief* was filed and served electronically with the Clerk of Court using the Court's CM/ECF system on May 1, 2026.

/s/ Erik Kverne
Erik Kverne
Corrections Practice Manager – Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com