**Nos. 24-12290DD, 24-12391DD**

---

# United States Court of Appeals
**FOR THE ELEVENTH CIRCUIT**

---

**STEVEN R. DEWITT,**
Plaintiff - Appellant,

**v.**

**APALACHEE CI WARDEN,**
Defendant - Appellee.

---

**Appeal from the United States District Court for the Northern District of Florida**

---

**REPLY BRIEF OF APPELLANT STEVEN R. DEWITT**

Erica Hashimoto
*Director*
GEORGETOWN UNIVERSITY LAW CENTER
APPELLATE LITIGATION PROGRAM
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu
*Counsel for Appellant*

June 12, 2026

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel for Plaintiff-Appellant Steven DeWitt certifies that the following persons and entities may have an interest in the outcome of this case:

- Apalachee Correctional Institution;
- Belitzky, Joe, Former Counsel for Appellee;
- DeWitt, Steven, Appellant;
- Fitzpatrick, Martin A., United States Magistrate Judge;
- Florida Department of Corrections;
- Florida Northwest Reception Center;
- Hashimoto, Erica, Counsel for Appellant;
- Kverne, Erik, Counsel for Appellee;
- Liberty Correctional Institution;
- Maddox, David, Appellee;
- Moody, Ashley, Former Florida Attorney General;
- Sharma, Ravi, Former Counsel for Appellee;
- Uthmeier, James, Florida Attorney General;
- Villalpando, Juanita, Trial Counsel for Appellee; and
- Walker, Mark, United States District Judge.

Counsel for Plaintiff-Appellant Steven DeWitt further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... C-1

TABLE OF CONTENTS .......... i

TABLE OF CITATIONS .......... iii

ARGUMENT .......... 1

I. MR. DEWITT MERITED COUNSEL GIVEN HIS BLINDNESS AND THE COMPLEXITY OF HIS CASE. .......... 2

A. Warden Maddox's Challenge to Mr. DeWitt's Blindness is Unfounded. .......... 2

B. Warden Maddox Misappraises the Appointment-of-Counsel Test. .......... 7

II. THE DISTRICT COURT REVERSIBLY ERRED BY EXCLUDING KEY WITNESSES AND EVIDENCE. .......... 10

A. Mr. Beavers' Testimony Was Critical to Mr. DeWitt's Case, and the Exclusion of It Was Unwarranted and Prejudicial. .......... 11

B. Excluding Officer House Was Improper Because He Offered Important Testimony that Caused No Prejudice to Warden Maddox's Case. .......... 14

C. The Exclusion of Ms. Ottinger Was Improper Because She Was Able to Offer Testimony to Refute Warden Maddox's Late Forgery Defense .......... 17

D. The Peterson Memorandum and Yates Request Were Plainly Critical to Mr. DeWitt's Case, and the Exclusion of Them Prejudiced Mr. DeWitt .......... 20

III. THE DISTRICT COURT WAS WRONG TO INDEPENDENTLY EXAMINE MR. DEWITT'S CASE. .......... 23

CONCLUSION .......... 28

CERTIFICATE OF COMPLIANCE .......... 29

CERTIFICATE OF SERVICE .......... 30

## TABLE OF CITATIONS

### Cases

*Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*,
389 F.3d 1339 (11th Cir. 2004) .................................................. 17

*Bischoff v. Osceola Cnty.*,
222 F.3d 874 (11th Cir. 2000) .................................................. 13

*Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*,
816 F.3d 1343 (11th Cir. 2016) .................................................. 26

*DeJesus v. Lewis*,
14 F.4th 1182 (11th Cir. 2021) .......................................... 8, 9, 21

*Fed. Election Comm'n v. Wisc. Right to Life, Inc.*,
551 U.S. 449 (2007) .................................................................. 10

*Fernandez v. United States*,
941 F.2d 1488 (11th Cir. 1991) .................................................. 14

*Jones v. Bank of Am., N.A.*,
564 F. App'x 432 (11th Cir. 2014) ........................................ 11, 17

*Kilgo v. Ricks*,
983 F.2d 189 (11th Cir. 1993) .................................................. 11

*Moore v. Intuitive Surgical, Inc.*,
995 F.3d 839 (11th Cir. 2021) .................................................. 20

*Neal v. Cassiday*,
511 F. App'x 865 (11th Cir. 2013) .......................................... 8, 21

*Norris v. United States*,
820 F.3d 1261 (11th Cir. 2016) ...................................... 25, 26, 27

*Parker v. Connors Steel Co.*,
855 F.2d 1510 (11th Cir. 1988) ............................................ 25, 26

*Romero v. Drummond Co., Inc.*,
552 F.3d 1303 (11th Cir. 2008) .......... 19

*Smith v. Fla. Dep't of Corr.*,
713 F.3d 1059 (11th Cir. 2013) .......... 6

*Stewart v. Dep't of Health & Hum. Servs.*,
26 F.3d 115 (11th Cir. 1994) .......... 7

*United States v. Jordan*,
915 F.2d 622 (11th Cir. 1990) .......... 17

*United States v. Scrushy*,
721 F.3d 1288 (11th Cir. 2013) .......... 27

*United States v. Smith*,
30 F.4th 1334 (11th Cir. 2022) .......... 11

*Williams v. Carter*,
10 F.3d 563 (8th Cir. 1993) .......... 15

*Williams v. Wright*,
927 F.2d 1540 (11th Cir. 1991) .......... 20

**Statutes**

28 U.S.C. § 455 .......... 24

**Rules**

Fed. R. App. P. 28 .......... 11

Fed. R. Evid. 803 .......... 21

**Other Authorities**

Cindy X Hu et al., *What do Patients with Glaucoma See? Visual Symptoms Reported by Patients with Glaucoma*,
348 Am. J. Med. Sci. 403 (2014) .......... 6

Mona Kaleem, *Glaucoma*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/glaucoma ........................................................................ 4

Sarah Van Tassel, *How Glaucoma Progresses and What You Can Do to Protect Your Vision*, Glaucoma Rsch. Found., https://glaucoma.org/articles/how-glaucoma-progresses-and-what-you-can-do-to-protect-your-vision......................................... 5

## ARGUMENT

Warden Maddox avoids the core issues raised in Mr. DeWitt's opening brief. On the appointment of counsel issue, Warden Maddox asks this Court to contradict—without any medical evidence—the district court's determination, based on letters from Mr. DeWitt's doctor, that Mr. DeWitt suffers from long term end stage glaucoma and is legally blind. Warden Maddox's alternative arguments on this issue ignore that this was a complex and document-intensive trial, making it virtually impossible for Mr. DeWitt to litigate blind and pro se. The exacting standard to which Warden Maddox holds Mr. DeWitt as a blind, pro se litigant—one that not even a seasoned attorney could meet—underscores why failure to appoint counsel alone warrants reversal and remand for a new trial.

Warden Maddox responds to Mr. DeWitt's arguments that the district court erroneously excluded witness testimony and evidence by attempting to minimize the importance of that evidence. But Warden Maddox's own arguments demonstrate the critical nature of the omitted evidence. For instance, he simultaneously argues that Mr. Beavers' testimony was irrelevant and then faults Mr. DeWitt for having failed to

call a witness to authenticate critical documents, which Mr. Beavers could have done. Because the excluded witnesses and evidence were all critical to Mr. DeWitt's case, the district court's haphazard exclusion of them separately warrants remand.

On the recusal issue, Warden Maddox asks this Court to make a judgment—that an objective layperson would not have found partiality—that the district court never made. An evidentiary hearing is necessary for the district court to decide that question. For any and all of these reasons, this Court should reverse the entry of judgment against Mr. DeWitt and remand for a new trial.

## I. MR. DEWITT MERITED COUNSEL GIVEN HIS BLINDNESS AND THE COMPLEXITY OF HIS CASE.

### A. Warden Maddox's Challenge to Mr. DeWitt's Blindness is Unfounded.

Warden Maddox centrally defends the district court's decision denying Mr. DeWitt's request for counsel with an unsupported claim: Mr. DeWitt "is not blind." Resp. Br. at 31.[1] That defense is belied by the district court's findings, infected by misunderstandings of Mr. DeWitt's

[1] The opposition brief is cited as "Resp. Br." and page numbers are cited to the ECF pagination.

condition, and inappropriate for consideration at this juncture. This Court should reject it for any of those reasons.

Beginning with the district court's findings, Mr. DeWitt presented a simple appointment-of-counsel motion. He sought counsel's assistance "due to his vision impairment." Doc. 69 at 1. Mr. DeWitt explained that his vision impairment reduced his ability to "see and read trial documents," which would prevent him from "adequately examin[ing] or cross-examin[ing] witnesses." *Id.* He attached two statements from Dr. Walter Hathaway, his eye doctor. *See id.* at 4-6. Dr. Hathaway first stated that Mr. DeWitt was "legally blind in both eyes due to Long Term End Stage Glaucoma" and "unable to work because of his visual condition." *Id.* at 4. He supplied his phone number and offered himself to be "of further assistance." *Id.* In the second letter, Dr. Hathaway repeated that Mr. DeWitt is "legally blind due to severe glaucoma" and that the "condition is not reversible." *Id.* at 6.

The district court expressly recognized Mr. DeWitt's condition when it denied Mr. DeWitt's motion. The court stated that the "basis" for Mr. DeWitt's "motion is the fact that [he] is legally blind in both eyes due to Long Term End Stage Glaucoma." Doc. 71 at 2. (internal citation and

quotation marks omitted). It nevertheless determined that Mr. DeWitt "ha[d] been sufficiently able to represent himself throughout this litigation" and did not need counsel's assistance. *Id.* The district court's finding that Mr. DeWitt is legally blind contradicts Warden Maddox's appellate statement that "[throughout the trial, there was no reason for the District Court to believe that [Mr. DeWitt] was blind." Resp. Br. at 32.

Warden Maddox's position that Mr. DeWitt is not blind also fundamentally misunderstands Mr. DeWitt's condition. Glaucoma "is a chronic, progressive eye disease caused by damage to the optic nerve, which leads to visual field loss." Mona Kaleem, *Glaucoma*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/glaucoma (last visited June 7, 2026). It can "take[] months to years after the nerve damage has occurred" for symptoms to develop and cause the eventual total loss of vision. *Id.* Advanced stage glaucoma patients may experience difficulty with "[d]aily activities such as reading, navigating curbs and sidewalk cracks, and recognizing faces." Sarah Van Tassel, *How Glaucoma Progresses and What You Can Do to Protect Your Vision*, Glaucoma Rsch. Found., https://glaucoma.org/articles/how-

glaucoma-progresses-and-what-you-can-do-to-protect-your-vision (last visited June 7, 2026). Warden Maddox faults Mr. DeWitt for moving for appointment of counsel "seven hundred forty-two (742) days" after initiating his lawsuit. Resp. Br. at 31. But Mr. DeWitt's actions were wholly consistent with the progressive nature of glaucoma. That Mr. DeWitt's vision deteriorated over time is not surprising at all, but an expected result.

Warden Maddox points to a video of Mr. DeWitt's interaction with staff in the lobby of the Attorney General's office as proof that Mr. DeWitt was not blind. *Id.* at 33 (citing Doc. 31). According to Warden Maddox, the video shows that Mr. DeWitt did not have "difficulty navigating the area or communicating with staff" and did not carry a "walking stick or other indicator that he would have difficulty navigating public environments." *Id.* But these observations are irrelevant at best. They are not inconsistent with severe glaucoma, or the nuances of visual impairment. Whether Mr. DeWitt can approach a person in an empty lobby or interact with people speaking to him has no bearing on his ability to adequately examine handwritten documents or perform other distinctive visual tasks. *See* Cindy X Hu et al., *What do Patients with*

*Glaucoma See? Visual Symptoms Reported by Patients with Glaucoma*, 348 Am. J. Med. Sci. 403, 403-09 (2014) (explaining that vision blurriness is the most common effect of glaucoma). Mr. DeWitt's blindness "hindered [his] ability" to perform key trial activities and, correspondingly, "present the essential merits of his case." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1065 (11th Cir. 2013); *see also* DeWitt Opening Br. at 40-44 (describing Mr. DeWitt's inability to properly investigate, organize, and present his case).

Warden Maddox's other example of Mr. DeWitt's purported ability to see—Mr. DeWitt informing the court on the first day of trial that it appeared a juror was playing with her fingernail while the judge was talking—again misunderstands Mr. DeWitt's diagnosis. *See* Resp. Br. at 33-34. Glaucoma does not necessarily deprive an individual of all sight. It can instead blur and limit the field of vision. Hu et al., *supra*, at 403-09. Mr. DeWitt's ability to inform the court that "it appeared," Resp. Br. at 33, that the juror was looking down and playing with her fingernail is not inconsistent with his inability to read the documents at issue in his case, *see* DeWitt Opening Br. at 41-42 (describing trial moments when

Mr. DeWitt could not see or read relevant documents). These tasks simply require different visual capacities.

Warden Maddox's challenge to Mr. DeWitt's blindness is lastly out of place before this Court because it was never explored below. *Cf. Stewart v. Dep't of Health & Hum. Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) (articulating the general rule that this Court "will not address an argument that has not been raised in the district court," particularly those contesting unchallenged "factual questions"). The district court did not doubt Mr. DeWitt's condition and denied his appointment-of-counsel motion with the understanding that Mr. DeWitt is legally blind. Given this clear finding, this Court should not probe into and consider Warden Maddox's belated factual challenges to Mr. DeWitt's blindness because that is a question best left for district court scrutiny.

### B. Warden Maddox Misappraises the Appointment-of-Counsel Test.

Warden Maddox's appointment-of-counsel argument largely collapses given the incorrectness of his central claim that Mr. DeWitt is not blind. But his remaining arguments are also deficient. Warden Maddox discusses only three appointment-of-counsel factors: Mr. DeWitt's ability to adequately investigate his case and to present it and

the complexity of his case. *See* Resp. Br. at 34-37; *see also DeJesus v. Lewis*, 14 F.4th 1182, 1204-05 (11th Cir. 2021) (listing five factors for evaluating requests to appoint counsel); DeWitt Opening Br. at 40-50 (discussing each of the factors in turn).

Warden Maddox asserts that Mr. DeWitt was able to investigate and present his case because he "was allowed to thoroughly litigate the issues surrounding the exhibits and witnesses by submitting numerous amendments to his lists," "introduce into evidence all but one exhibit" at trial, and present lengthy witness testimony. Resp. Br. at 34-35. But Mr. DeWitt's access to these opportunities is the bare minimum for civil litigation. That he had the *opportunity* to perform these tasks does not refute that his blindness limited his effectiveness in doing so. *See, e.g.*, *Neal v. Cassiday*, 511 F. App'x 865, 866 (11th Cir. 2013) (finding "exceptional circumstances" because the plaintiff's "pre-existing partial blindness . . . significantly undermined his ability to prepare for trial"). Mr. DeWitt's blindness meant that he had to rely on others both for basic investigative tasks and, at a crucial moment prior to trial, to review 1,833 pages of corrections records. *See* Doc. 82 at 2. While Mr. DeWitt may

have been "allowed to thoroughly litigate" his case, Resp. Br. at 34, he was unable to fully do so because he was a blind, pro se litigant.

Warden Maddox lastly argues that the complexity of Mr. DeWitt's case "stems" entirely from "a complete lack of evidentiary support," tied to Warden Maddox's belief that Mr. DeWitt "altered and fabricated evidence." *Id.* at 35. But the issues of document alteration or fabrication were fact questions left to the jury. *See* Doc. 230 at 32 (district court explaining that it was "up to the jury to decide who is telling truth with respect to the [disputed] documents"). And the jury's answers to those questions do not touch on the antecedent question of whether litigating the issue of purported document alteration was "factually" and "legally complicated." *DeJesus*, 14 F.4th at 1205. It was. Stacked on top of the inherent complexities of Mr. DeWitt's Eighth and First Amendment claims—which required showing deliberate indifference and retaliation—the parties' nuanced disputes over the records placed Mr. DeWitt on precarious footing. *See id.* at 1204 (stating that counsel is favored when "skill[ed] . . . presentation of evidence and in cross examination" is required). Mr. DeWitt deserved the assistance of counsel

in establishing that his documents were not altered or fabricated and that Warden Maddox violated Mr. DeWitt's constitutional rights.

## II. THE DISTRICT COURT REVERSIBLY ERRED BY EXCLUDING KEY WITNESSES AND EVIDENCE.

Warden Maddox's response to Mr. DeWitt's evidentiary arguments asks this Court to bless a game of "heads I win, tails you lose." *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 471 (2007) (rejecting such an argument). With respect to the exclusion of Mr. DeWitt's proposed records custodian, Mr. Beavers, Warden Maddox asserts that Mr. Beavers' testimony was unnecessary and irrelevant. Resp. Br. at 39-41. At the same time, Warden Maddox argues that the Peterson Memorandum and the Yates Request could not be admitted because Mr. DeWitt did not call a records custodian. *Id.* at 49, 52. Warden Maddox next argues that Mr. DeWitt "oversells" the importance of Officer House's testimony. *Id.* at 42. But he does so shortly after using a picture of a trial exhibit bearing Officer House's name to support a claim that Mr. DeWitt "fabricated" documents. *Id.* at 36.[2] Finally, after asserting that appointed counsel was unnecessary in this case, *id.* at 34-

[2] This exhibit was so central to Warden Maddox's theory at trial that he mailed a physical copy of it to this Court. *See* Resp. Br. at 36 n.5.

37, Warden Maddox faults Mr. DeWitt for failing to follow the minutiae of expert- and witness-disclosure rules and lodge the right objections at the right time and in the right way.[3] His brief erects an "obstacle course" of "unnecessary procedural barriers" designed to make pro se litigants like Mr. DeWitt "g[i]ve up in despair." *Kilgo v. Ricks*, 983 F.2d 189, 193-94 (11th Cir. 1993). This Court should not countenance those barriers.

### A. Mr. Beavers' Testimony Was Critical to Mr. DeWitt's Case, and the Exclusion of It Was Unwarranted and Prejudicial.

Warden Maddox does not contest that the trial court erred by granting the motion to strike Mr. Beavers without giving Mr. DeWitt an opportunity to respond to that motion and failing to articulate a clear rationale in its order. He also does not contest that the denial of an opportunity to be heard on a material issue is "never harmless error." DeWitt Opening Br. at 53 (quoting *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022)). This alone warrants reversal and remand. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When

---

[3] The Warden's expectation that Mr. DeWitt know and follow every procedural rule is somewhat ironic given that the Warden insists on referring to the parties as "Appellant" and "Appellee" throughout his brief. *But see* Fed. R. App. P. 28(d) ("In briefs and at oral argument, counsel should minimize the use of the terms 'appellant' and 'appellee.'").

a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (alteration omitted)).

Even on the merits, Warden Maddox's arguments that Mr. Beavers' testimony was unnecessary and irrelevant suffer from a fatal flaw: They are unresponsive to the fact that Mr. DeWitt sought to call Mr. Beavers to testify not just about which documents were or were not in his classification file, but also about FDC's approach to redacting documents in that file. Doc. 79 at 1-2. For instance, Warden Maddox's argument that Mr. DeWitt was "able to introduce all but a single exhibit at trial without the need for Beavers' testimony," Resp. Br. at 40, is not responsive to the redaction arguments that Mr. DeWitt made in the district court, Doc. 79 at 2, and in his opening brief, DeWitt Opening Br. at 55-57.

The only arguably responsive point Warden Maddox makes—that an affidavit from a records custodian, Charles Williams, contradicts Mr. Beavers' proposed testimony, Resp. Br. at 40—both overstates Mr. Williams' affidavit and ignores that witnesses often disagree. Such disputes are for the jury to decide. To be sure, Mr. Williams attested that Mr. DeWitt's exhibits and the classification file's exhibits are "similar,"

the "FDC document contains less information" than Mr. DeWitt's, and it is possible that the latter had been "altered from its original form and passed off as a legitimate FDC document." Doc. 170-2 at 2-3. But Mr. Williams neither included any information about who altered those documents nor discussed whether FDC has a policy of redacting documents. *See* Docs. 170-2; 170-16.

Mr. DeWitt was clear that FDC performed that alteration—a fact that Mr. DeWitt expected Mr. Beavers to explain. Doc. 79 at 2; *see also* Doc. 230 at 59, 127 (Mr. DeWitt testifying at trial that FDC had altered his documents). As Mr. DeWitt explained when he first sought to call Mr. Beavers as a witness, the purpose of Mr. Beavers' testimony was not only to explain the redaction process but also to bolster Mr. DeWitt's credibility.[4] Mr. Beavers' presence in front of the jury—reinforcing that Mr. DeWitt's explanation of FDC's redaction of documents was accurate—was crucial to the jury's understanding and consideration of Mr. DeWitt's testimony. *See Bischoff v. Osceola Cnty.*, 222 F.3d 874, 881 (11th Cir. 2000) ("In both the criminal and civil context, credibility

[4] Warden Maddox's statement that "any records custodian would have testified" like Mr. Williams, Resp. Br. at 40, is pure conjecture.

determinations generally are most reliable when the factfinder is able to observe the witness in person.”).

Finally, Warden Maddox’s argument that Mr. DeWitt needed to repeatedly request Mr. Beaver’s testimony is legally unjustified. Resp. Br. at 41. Warden Maddox cites no law requiring a pro se litigant to assume that the district court does not mean what it says when it issues an order. And imposing an additional, unspoken procedural obligation on a pro se litigant is inconsistent with this Court’s precedent. *See Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991).

### B. Excluding Officer House Was Improper Because He Offered Important Testimony that Caused No Prejudice to Warden Maddox’s Case.

Warden Maddox’s three reasons for excluding Officer House ignore the district court record. First, the record demonstrates that Mr. DeWitt’s belated disclosure of Officer House arose from a misunderstanding, not bad faith. Second, the record shows that Officer House’s testimony was important to Mr. DeWitt’s case. Finally, Warden Maddox offered nothing concrete showing that Officer House testifying would have prejudiced his defense. Resp. Br. at 43-44.

The misunderstanding that led Mr. DeWitt to belatedly disclose Officer House as a witness does not "strain[] credulity." *Id.* at 42. Far from it. Mr. DeWitt was *twice* told by the court to reduce his witness list. Docs. 65 at 3; 241 at 6 (recounting the second time). And he followed those instructions: "When the Court told me to actually cut my witnesses, or cut my witness list down, this is the reason I took them off." Doc. 241 at 6. Mr. DeWitt's reason for cutting his witnesses was not an "ad hoc" justification. Resp. Br. at 42. It was a legitimate misunderstanding. *See Williams v. Carter*, 10 F.3d 563, 566-67 (8th Cir. 1993) (finding confusion pretrial indicative of a need for counsel).

Warden Maddox's next argument—diminishing Officer House's centrality to this case—is perplexing. Resp. Br. 42-43. Mr. DeWitt testified at trial that his "known enemies" were on the April 5 transfer bus, and Officer House would have testified that he personally heard those individuals make threats to "kill" Mr. DeWitt before the April 5 transfer. Docs. 230 at 191; 170-9 at 3. That fact would have supported Mr. DeWitt's deliberate indifference claim. This testimony would have also contradicted the defense's claim that Mr. DeWitt did not require protective management for his April 5 transfer. Doc. 230 at 259.

Moreover, defense counsel relied on the so-called discrepancies in the House Form to argue that Mr. DeWitt forged documents and was an uncreditable liar, as well as to fuel he-said-he-said disputes. Doc. 232 at 63-64. Officer House was mentioned more than thirty times at trial. *See* Docs. 229; 230; 232. Warden Maddox, in fact, went so far as to paste pictures of the House Form into his response brief, ostensibly to provide the "most telling example of an altered document" to prove that Mr. DeWitt "fabricated evidence to support his claims." Resp. Br. at 35-36.[5] Officer House's testimony was integral to this case. He would have clarified to the jury which House Form was the original and which was redacted.

Finally, Officer House's inclusion would not have prejudiced Warden Maddox. The district court agreed to subpoena two of Mr. DeWitt's witnesses—including Ms. Hauser, who ultimately testified—on November 17, 2023. Doc. 241 at 2, 13-14. Two business days later, Mr. DeWitt requested Officer House. Doc. 130 at 4. Because the inclusion of Ms. Hauser, an FDC employee, was not prejudicial on November 17,

[5] Warden Maddox does not supply proof for that claim, apparently asking this Court to resolve a credibility dispute that the district court pointedly left to the jury.

there is no reason why the disclosure of Officer House, another FDC employee, two business days later, would have been prejudicial. Trial, after all, did not actually commence until June 10, 2024, almost seven months after the request.

The district court abused its discretion by excluding Mr. House, a necessary and non-prejudicial witness. *See Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004). Indeed, in the order denying Mr. House's testimony, the court did not engage in any legal analysis related to Officer House or even mention his name. Doc. 134 at 3. Nothing in Warden Maddox's brief justifies the extreme sanction the district court imposed.

### C. The Exclusion of Ms. Ottinger Was Improper Because She Was Able to Offer Testimony to Refute Warden Maddox's Late Forgery Defense.

Warden Maddox does not contest that Mr. DeWitt's motion for a mistrial should be construed as one seeking to call an expert. *See Jones*, 564 F. App'x at 434; *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990). The only disputed issue is whether the district court erred by foreclosing Mr. DeWitt from calling Ms. Ottinger to testify about Warden Maddox's forgery theory.

The evolution of Warden Maddox's forgery theory precluded Mr. DeWitt from being able to call Ms. Ottinger. Mr. DeWitt sought to include Ms. Ottinger in all his witness lists—despite not knowing the expert witness procedural rules—to testify about whether he had forged documents. Docs. 64 at 11; 67 at 10-11; 79 at 4. When the defense moved to strike her, it argued that her testimony was not relevant. Doc. 81 at 5. The district court agreed, stating that there was "no dispute in this case about any involvement of Officer Peterson, about Officer Peterson's handwriting, or some form that officer prepared." Doc. 83 at 3.

Nine months later—and just two weeks before trial—Warden Maddox argued that Mr. DeWitt forged the "form that officer prepared": the Peterson Memorandum. Doc. 170 at 5-8. And he requested that the court strike that document, among a handful of others. *Id.* at 4-10. Mr. DeWitt, having had his expert witness struck and needing to introduce these documents, moved for the court to inspect his documents. Doc. 167. Although the district court denied the motion to exclude the document, it refused to inspect either that document or Mr. DeWitt's other exhibits. Docs. 169; 180 at 3. At trial, the defense questioned the authenticity of Mr. DeWitt's documents, cast doubt on his credibility because of that

disputed authenticity, and successfully had the Peterson Memorandum excluded. Docs. 229 at 166-73; 230 at 79. Having no expert witness to speak to the legitimacy of his documents, Mr. DeWitt moved for a mistrial. Doc. 230 at 10.

The district court abused its discretion when it prevented Mr. DeWitt from calling Ms. Ottinger to rebut the defense's forgery theory. Mr. DeWitt's inability to comply with Rule 26's requirements was harmless and justified. That error should not have foreclosed Mr. DeWitt from calling Ms. Ottinger because Warden Maddox failed to explain how the belated disclosure prejudiced him. *See Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008). And Mr. DeWitt's delay was justified considering the defense's introduction of its forgery theory in the few weeks before trial after arguing that Ms. Ottinger's testimony was not relevant. *Compare* Doc 170 *with* Doc. 81.

Warden Maddox next argues that Ms. Ottinger lacked the credentials to serve as an expert witness. Resp. Br. at 45-46. This argument puts the cart before the horse by seeking, in effect, a *Daubert* determination from this Court. Ms. Ottinger was a qualified expert. Doc. 193-4 at 3. She had nineteen years of experience identifying altered

documents—the exact subject of her requested testimony. *Id.* And most importantly, this Court cannot meaningfully review the issue of whether Ms. Ottinger is a qualified expert. *See Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 858 (11th Cir. 2021) (declining to rule on an expert's opinion "in the face of an admittedly undeveloped record" because that would "usurp[] the role of the trial court"); *Williams v. Wright*, 927 F.2d 1540, 1551 (11th Cir. 1991) ("These factual issues were not addressed by the district court, and we therefore decline to address them here, preferring that they be addressed in the first instance by the district court."). This analysis is better suited to development on remand.

### D. The Peterson Memorandum and Yates Request Were Plainly Critical to Mr. DeWitt's Case, and the Exclusion of Them Prejudiced Mr. DeWitt.

Warden Maddox argues that the Peterson Memorandum and Yates Request could not be introduced at trial either: (1) as business records because they were inauthentic and Mr. DeWitt failed to call a records custodian, or (2) for notice because Mr. DeWitt failed to lay a proper foundation. These are, of course, the exact kinds of evidentiary requirements that merit the appointment of counsel in complex cases

litigated by pro se individuals with disabilities. *See Neal*, 511 F. App'x at 866; *DeJesus*, 14 F.4th at 1205.

But the arguments are also wrong. Warden Maddox does not dispute that both documents were made by someone with knowledge and that making similar records was a regular practice of FDC. Resp Br. at 48, 52; Fed. R. Evid. 803(6)(B), (C). Instead, he gestures toward authenticity objections that the district court firmly and repeatedly rejected, *see e.g.*, Docs. 180 at 3-5; 230 at 75, without providing this Court a reason to adopt them. And he maligns Mr. DeWitt for not calling a witness to rebut Mr. Williams' affidavit. Resp. Br. at 48-49, 52.

That argument demonstrates the prejudice of excluding Mr. Beavers at trial. It prevented Mr. DeWitt from introducing these two obviously relevant business records. The Peterson Memorandum confirmed Mr. DeWitt's "allegation of being threatened by inmates," that he had been "recommended a negative transfer," and that his informal grievances had been relayed to Warden Maddox. Doc. 187-5. And the Yates Request confirmed that Northwest staff had long heard and recorded threats against Mr. DeWitt. Doc. 90-1 at 45. These pieces of evidence would have burnished Mr. DeWitt's credibility at trial.

Warden Maddox also overstates his own records custodian's testimony. While Mr. Williams averred that FDC has "no record" of the Peterson Memorandum and it does not currently appear in Mr. DeWitt's classification file, Doc. 170-2 at 2, that does not mean the Peterson Memorandum never appeared there. But even had the Peterson Memorandum not appeared in Mr. DeWitt's file, that would be neither particularly meaningful nor surprising.[6] Regardless, Mr. DeWitt ought to have been permitted to call the necessary witness to discuss what had been redacted from his classification file, as he intended.

Warden Maddox is also wrong when he says that Mr. DeWitt inexcusably failed to lay the foundation for "notice" of either document.

---

[6] As Mr. DeWitt explained to the district court, FDC staff are not required to file information submitted by an inmate on an FDC Inmate Request Form that does not have the "informal grievance" box checked. Doc. 174 at 5; *see also* Doc. 229 at 174 (FDC officer Stephanie Justice testifying that a document "not designated as [an informal] grievance" need not be filed). Because the Peterson Memorandum is a response to an FDC Inmate Request Form that had not been marked as an informal grievance, it did not need to be placed in Mr. DeWitt's classification file. Docs. 174 at 5-6; 229 at 174; *compare* Doc. 170-1 at 3 (reciting that Mr. DeWitt's "request" had been received), *with* Doc. 170-4 at 3 (reciting that Mr. DeWitt's "informal grievance" was denied). The district court accepted that information when it both rejected Warden Maddox's motion in limine to exclude the Peterson Memorandum and ruled that the Peterson Memorandum was sufficiently authentic. Doc. 180 at 5. As an FDC records custodian, Mr. Williams would have been aware of this fact.

Resp. Br. at 49, 52. Mr. DeWitt expressly asked to introduce the Peterson Memorandum for notice purposes, indicating that he had "received [the Memorandum] from [Ms. Peterson]," Doc. 230 at 79, and was aware he had been recommended for a negative transfer. The district court summarily cut him off, saying that Mr. DeWitt could not "say what she said." *Id.* at 80. Mr. DeWitt, however, simply wanted to demonstrate the effect that Memorandum had on him. As for the Yates Request, it is plain from the face of the document that it would demonstrate that Northwest staff, including Warden Maddox, had notice of threats to Mr. DeWitt. Doc. 90-1 at 45. It was therefore plain error to exclude both documents.

## III. THE DISTRICT COURT WAS WRONG TO INDEPENDENTLY EXAMINE MR. DEWITT'S CASE.

On Mr. DeWitt's disqualification challenge, Warden Maddox avoids the central prongs of Mr. DeWitt's claim: that Judge Walker was wrong to engage in independent investigations into Mr. DeWitt's allegations and to resolve the issue without conducting an evidentiary hearing. Warden Maddox focuses primarily on the propriety of the district judge's motion rulings against Mr. DeWitt and argues that those adverse rulings cannot create a finding of bias. *See* Resp. Br. at 55-58; *see also id.* at 58 ("The decisions [Mr. DeWitt] takes issue with are judicial decisions,

which are not justifications for disqualification.”). But Mr. DeWitt does not rely upon the motions rulings as the basis for his request for further inquiry into the need for disqualification. *See* DeWitt Opening Br. at 68-74.

Judge Walker’s independent investigations into Mr. DeWitt are instead what created the need for an evidentiary hearing. Warden Maddox says the district court’s sua sponte clarification order “is a red herring” because had Judge Walker allowed Warden Maddox to respond, Warden Maddox “would have . . . presented” the facts needed to “support . . . the legal justification for denial.” Resp. Br. at 58. But at bottom, the district judge *did not* wait for Warden Maddox to respond to Mr. DeWitt’s allegations to supply a proper legal justification for denial. Rather, Judge Walker denied Mr. DeWitt’s disqualification motion and then independently researched his prior interactions with Mr. DeWitt. *See* Doc. 120 at 1. That action demonstrated “personal knowledge of disputed evidentiary facts,” 28 U.S.C. § 455(b)(1), and was improper under Rule 2.9(C) of the American Bar Association Model Code of Judicial Conduct, which instructs judges not to “investigate facts in a matter independently” and to “consider only the evidence presented.”

Warden Maddox argues that Mr. DeWitt has not demonstrated that "an objective, disinterested, lay observer . . . would entertain a significant doubt about the judge's impartiality." Resp. Br. at 58 (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)). But remand is required to address the question of objective partiality precisely because Judge Walker never addressed it. *See Norris v. United States*, 820 F.3d 1261, 1266 (11th Cir. 2016) (remanding for an evidentiary hearing and for the lower court to consider "whether there [wa]s an intolerable probability" of judicial partiality); *see also* DeWitt Opening Br. at 68-69 (discussing Judge Walker's sole attention to whether he had personal knowledge of Mr. DeWitt). Warden Maddox's agreement that disqualification inquiries require answering whether an objective observer would perceive the judge's actions as impermissibly partial shows why remand is required for Mr. DeWitt's claim.

Warden Maddox further indicates that this Court should not consider Judge Walker's independent communication with the FDC Inspector General that Mr. DeWitt offered. Resp. Br. at 53-55. While Warden Maddox is correct that Mr. DeWitt introduced the letter for the first time in a motion filed before this Court, this Court may—as Warden

Maddox recognizes—consider the letter "where the interest of justice is at stake." *Id.* at 55 (quoting *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016)). Such an interest is at stake because litigants are entitled to "a fair trial in a fair tribunal, before a judge with no actual bias . . . or interest in the outcome of [the] particular case." *Norris*, 820 F.3d at 1265 (cleaned up); *see also Parker*, 855 F.2d at 1523 (explaining that the judicial disqualification doctrine is premised on "the principle that our system of justice must satisfy the appearance of justice" (internal quotation marks omitted)).

Consideration of Judge Walker's letter to the FDC Inspector General is also appropriate because Mr. DeWitt seeks only a remand for an evidentiary hearing. The letter, in which Judge Walker asked the Inspector General to investigate Mr. DeWitt's descriptions of being targeted and harmed in prison, enclosed a copy of Mr. DeWitt's correspondence to Magistrate Judge Charles A. Stampelos describing that abuse. Mr. DeWitt's letter identifies Officer Yates as having heard about the threats made against Mr. DeWitt by other inmates at Northwest. Letter of Steven R. DeWitt, ECF No. 45, *DeWitt v. Florida*, No. 4:15-cv-00433 (N.D. Fla. Aug. 17, 2017) at 3. Mr. DeWitt sought to

present that same evidence at trial through the testimony of Officer Yates. This information prima facie refutes Judge Walker's statement that he "ha[d] no personal knowledge of the facts of [Mr. DeWitt's] case." Doc. 119 at 2. An evidentiary hearing is precisely where the lower court could more fully consider the letter, and Mr. DeWitt could attempt "to prove" that Judge Walker was impermissibly partial against him. *Norris*, 820 F.3d at 1266; *see also United States v. Scrushy*, 721 F.3d 1288, 1299 (11th Cir. 2013) (describing district court's request that this Court appoint a judge to decide a motion to recuse when a non-record, ex parte communication had come to light after trial had concluded).

Warden Maddox closes by arguing that even if Judge Walker's actions were improper, they were harmless. *See* Resp. Br. at 60-63. But that argument is again premature. Any evaluation of whether Judge Walker harmfully overlooked a substantive basis to disqualify should come after a complete record has been developed from an evidentiary hearing. *See, e.g.*, *Norris*, 820 F. 3d at 1266 (remanding to allow an initial determination as to whether there was "an intolerable probability" that the judge was partial). Mr. DeWitt should be permitted to probe into whether Judge Walker had prior, personal knowledge of Mr. DeWitt's

case and, if so, whether that knowledge may have affected the proceedings. Remand is warranted for an evidentiary hearing.

## CONCLUSION

For the forgoing reasons, this Court should reverse the judgment and bill of costs against Mr. DeWitt and remand for a new trial with appointed counsel.

Respectfully Submitted,

*/s/* Erica Hashimoto

Erica Hashimoto
*Director*
GEORGETOWN UNIVERSITY LAW CENTER
APPELLATE LITIGATION PROGRAM
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu
*Counsel for Appellant*

Dated: June 12, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 5650 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). It complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook font in the Microsoft Word software.

*/s/* Erica Hashimoto
Erica Hashimoto
Georgetown University Law Center
Appellate Litigation Program

Dated: June 12, 2026

## CERTIFICATE OF SERVICE

I, Erica Hashimoto, certify that on June 12, 2026, I electronically filed the foregoing Opening Brief of Appellant Steven R. DeWitt via this Court's CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case.

*/s/* Erica Hashimoto

Erica Hashimoto
Georgetown University Law Center
Appellate Litigation Program

Dated: June 12, 2026